# LEGG *et al.* v. MIDLAND SAVINGS & LOAN CO.

No. 5297.    Opinion Filed January 11, 1916.

Rehearing Denied February 1, 1916.

(154 Pac. 682.)

1. **BUILDING AND LOAN ASSOCIATIONS—Powers—Right to Loan Accumulations—Premiums.** A building and loan association incorporated within the State of Colorado under the laws of that state may loan its accumulations to members, upon such plan of repayment as may be provided for in its by-laws, and may charge, contract for and recover a premium upon such plan as may be provided for in the by-laws or note, or other evidence of indebtedness taken by such association, all of which notes shall be in form non-negotiable. Sec. 6, c. 33, Laws of Colo. 1897.

2. **SAME—Competitive Bidding.** A building and loan association organized within that state and under its laws may loan its accumulations, when the by-laws of the association so provide, without the necessity of competitive bidding.

3. **SAME—Contracts—Right to Enforce—Law Governing.** A contract between such building and loan association and one of its members, made in the Territory of Oklahoma, to be performed in the State of Colorado, is governed by the law of the place of performance, and, if valid under the law of that state and not violative of the public policy of said territory, is enforceable in the courts of this state.

(Syllabus by Bleakmore, C.)

*Error from District Court, Pottawatomie County;*
*Charles B. Wilson, Jr., Judge.*

Action by the Midland Savings & Loan Company, a corporation, against J. F. Legg and others. Judgment for plaintiff, and defendants bring error. Modified and affirmed.

*H. H. Smith,* for plaintiffs in error.

*Park Wyatt* and *A. J. Bryant,* for defendant in error.

Opinion by BLEAKMORE, C. This action was commenced on June 17, 1911, in the district court of Potta-

watomie county, by the Midland Savings & Loan Company against J. F. Legg, Minnie F. Legg, Robert Robertson, and T. J. Engle, to recover a sum alleged to be the balance due upon a certain bond and to foreclose a real estate mortgage securing the same. Robertson and Engle disclaimed any interest in the property.

The facts necessary to a determination of the questions presented for review are that: On December 1, 1905, J. F. Legg applied in writing for membership in the Midland Savings & Loan Company, a building and loan association incorporated and existing under the laws of the State of Colorado and having its principal place of business and home office in the city of Denver, and subscribed for 25 shares of its stock to be paid for in monthly installments; at the same time applying to said association for a loan of $800, and agreeing, as a condition to the making of such loan, that he would be bound by the laws of the State of Colorado and the rules and regulations of the association. On the same day he and his wife, Minnie F. Legg, executed what is termed a first mortgage non-negotiable bond for the sum of $800, payable to said association, together with a mortgage on certain real estate situate in the city of Tecumseh, Pottawatomie county, Okla., and an assignment of said shares of stock to secure the same, the bond providing, in substance, that J. F. Legg and Minnie F. Legg are indebted to the Midland Savings & Loan Company, a corporation under the laws of Colorado, in the sum of $800, advanced upon 25 shares of capital stock owned by said Legg and assigned as collateral security, which is to be matured in monthly payments at $10 each, and the makers agree to pay $5 a month interest and $3 a month as premium upon said loan, and such fines as may accrue upon delin-

quent monthly payments of stock, interest, and premium, according to the by-laws of the company governing the same; and in case of default suit may be brought and attorneys' fees included in the sum of $80, and the withdrawal value of the shares of stock applied, the bond to be delivered and its conditions performed in the State of Colorado and in all respects governed by the laws of that state.

The by-laws of the association provide, in substance, that all real estate loans shall bear interest and premium as may be provided for in the note, bond, or other evidence of indebtedness taken by the company, which shall be payable at the home office of the company; and that fines may be charged for delinquent payments, and all loans shall be construed as having been made in Denver, Colo., and with reference to the laws of said state; and that an expense charge of 3 per cent. of the par value of stock shall be deducted from the first payment or payments on the shares; and that no agent shall have authority, express or implied, to make contracts or agreements concerning loans, but the same must be made with the home office of the company; that, in case any shares are deposited as collateral security for a loan, and the borrower desires to repay such loan, he shall be credited thereon with the withdrawal value of such shares of stock, less all charges for insurance, taxes, and other advances, and all due and delinquent loan payments and fines; that such borrower shall not be required to pay a combined rate of interest and premium in excess of one per cent. per month upon the amount loaned; and that, in estimating the amount or rate of interest, there shall be included all interest, premium, and moneys paid to the company or to its agents as commission or on account of

shares of stock pledged, less the guaranteed cash surrender value of such stock; and that for an examination of the title of the property a fee of $5 may be charged, and a membership fee not to exceed one per cent. of the amount of the loan.

Certain provisions of the statute of Colorado contained in chapter 33 of the Session Laws of 1897, pleaded and properly proved, were introduced in evidence, as follows:

"Section 1. Any association of not less than three persons hereafter incorporated under the laws of this state, which shall be organized within this state for the purpose of raising a fund by the collection of dues or stated payments from its members, to be loaned among its members, shall, in furtherance of such purpose, and after having complied with the requirements of this act, be authorized and empowered to levy, assess, and collect from its members such sums of money, by rates of stated dues, fines, interest on loans advanced, and premiums bid by members for the right of precedence in taking loans, as the corporation may provide for in its constitution or by-laws. * * * ,

"Sec. 3. Every such association now or hereafter incorporated under the laws of this state complying with the provisions of this act, may issue and sell its shares of stock in one or more successive series, or upon the permanent or Dayton plans in the denominations and to the extent as limited in the articles of incorporation of such associations, either fully or partially paid up in periodical or other installments, or upon all, either, or any of these plans and with or without full participation in the earnings of such association, or partially in limited dividend bearing stocks as may be provided by the by-laws of such association, for the purpose of raising a fund to make advances to members upon first mortgage, or trust deed, liens, upon real estate and upon the shares of stock issued by such association, or upon both such securities. * * *

"Sec. 6. Every such corporation organized under the laws of the State of Colorado may loan its accumulations to members upon such plan of repayment as provided by its by-laws. They may charge, contract for and recover a premium upon such a plan as may be provided for in the by-laws, or note, or other evidence of indebtedness taken by such association, all of which notes shall be in form nonnegotiable.

"Sec. 7. No premiums, fines, or interest on such premium that may accrue to the said association, according to the provisions of this act, shall be deemed usurious; and the same may be collected as debts of like amount are now by law collected in this state; but no fees for nonpayment of dues shall exceed five per cent. per month for the first sixty days, and two per cent. per month thereafter."

Defendants made certain payments upon the indebtedness evidenced by the foregoing instruments, and defaulted in others. Recovery was sought and had for the alleged unpaid portion of the principal debt, interest at the rate of $5 per month, premium $3 per month, certain fines assessed upon delinquent payments, insurance premiums advanced, and attorneys' fees. At the close of the evidence the court sustained a demurrer to the evidence offered on behalf of defendants, and rendered judgment for plaintiff.

The only evidence offered on behalf of defendants as going to the merits of the case was that of J. F. Legg, certain portions of which evidence were excluded. By such testimony it was attempted to establish the fact that the contract in question was made with an agent of the company in the State of Oklahoma. The portion of the evidence excluded is, in our opinion, immaterial.

The application for membership in the association, as well as the application for the loan, and the bond, mortgage, and assignment of stock, were all executed in the State of Oklahoma, and forwarded to the office of the association in Denver, Colo.

Defendants complain of the refusal of the trial court to suppress a deposition for the alleged reason that the same was taken without notice to them. The trial court heard evidence upon the question of the service of such notice, and admitted the deposition. There being evidence of the proper service of the requisite notice, the action of the trial court in this regard will not be disturbed.

It is also insisted that there was error in the admission of the testimony of the witness whose deposition was taken, for the reason that the same was incompetent. It is not thought necessary to discuss this evidence at length, as, in the main, the essential facts testified to by the witness are established by the written instruments identified by the defendant Legg.

It is further contended that the Session Laws of the State of Colorado, *supra,* were improperly admitted in evidence because they were not shown to be in force at the time of the execution of the contracts in question. There appears to be no merit in this contention. The statute was proved to have been enacted and in force in 1897, and the general rule is that, when a statute is once shown to be in force, the continuance of its existence is a matter of presumption until the contrary is established.

The principal questions presented by the assignments of error and urged here are that the contracts in question are governed and are to be construed by the laws of this

state and not those of the State of Colorado, and that by
virtue of the law of this state, as well as that of the
State of Colorado, the loan in question not being let upon
a competitive bid, the plaintiff is not entitled to collect a
greater rate of interest than 7½ per cent. and is not en-
titled to recover any premium or fines, etc.  It will be
noted that the loan in question was not let upon competi-
tive bids, but was made under section 6, c. 33, of the
Session Laws of Colorado of 1897.

The questions presented by this assignment of error
have been determined adversely to the contention of the
defendant by this court, in *Midland Savings & Loan Com-
pany v. Henderson,* 47 Okla. 693, 150 Pac. 868, wherein it
was held, in construing contracts almost identical with
those involved herein, made in the Indian Territory and
to be performed in Colorado, that the parties having in
good faith contracted that the laws of Colorado should
control, in the absence of a statute forbidding nonresi-
dent building and loan companies from transacting busi-
ness in that jurisdiction and making loans of the char-
acter in question, the parties must be held to the per-
formance of their respective undertakings.  In the sylla-
bus it was held:

"A building and loan association incorporated within
the State of Colorado under the laws of that state may
loan its accumulations to members, upon such plan of re-
payment as may be provided for in its by-laws, and may
charge, contract for, and recover a premium upon such plan
as may be provided for in the by-laws or note or other evi-
dence of indebtedness taken by such asociation, all of
which notes shall be in form nonnegotiable.

"* * * Under section 6, p. 125, Laws Colo. 1897,
building and loan associations organized within that state
and under its laws may loan its accumulations, when the

by-laws of the association so provide, without the necessity of competitive bidding.

"As a general rule, it is within the power of the contracting parties, by the express terms of their contract or undertaking, to establish the place according to the laws of which the validity and construction of the contract shall be determined."

The contracts in question in the instant case were made prior to statehood in the Territory of Oklahoma, to be performed in the State of Colorado. It is not shown' that they are violative of the established public policy of said territory; and the general principle, that contracts made in one place to be performed in another are governed by the law of the place of performance, should be applied.

There was no error committed by the trial court affecting the substantial rights of defendants, save a mistake in computing the amount due under the contracts. The judgment rendered was for $727.67, and the further sum of $80 attorneys' fees. The correct amount, including attorneys' fees, is $700.23, with interest from the date of the judgment at the rate of 7½ per cent. per annum. The judgment should therefore be modified to this extent, and affirmed. *Midland S. & L. Co. v. Cox*, 46 Okla. 266, 148 Pac. 827.

By the Court: It is so ordered.