## MIDLAND SAVINGS & LOAN CO. v. KUNTZ *et al.*

No. 5876.    Opinion Filed April 11, 1916.

Rehearing Denied July 11, 1916.

(158 Pac. 604.)

**BUILDING AND LOAN ASSOCIATIONS—Transactions Invalid—What Law Governs.** A contract between a building and loan association and one of its members made in this state, to be performed in the State of Colorado, is governed by the laws of the place of performance; and, if valid under the laws of that state, when executed, cannot be attacked in this state, where the land mortgaged to secure the contract debt is situated, for usury exacted in violation of Constitution, art. 14, sec. 3, and Rev. Laws 1910, sections 1004, 1005.

(Syllabus by the Court.)

*Error from District Court, Grady County; Frank M. Bailey, Judge.*

Action by Emil Kuntz and another against the Midland Savings & Loan Company. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

*S. C. Durbin, A. J. Bryant,* and *Ames, Chambers, Lowe & Richardson,* for plaintiff in error.

*Maurice Smith* and *W. S. Staley,* for defendants in error.

TURNER, J.    There is no dispute as to the facts in this case.    The evidence discloses that defendant, the Midland Savings & Loan Company; is a building and loan association, duly incorporated under the laws of Colorado, with its home office in Denver.    On December 1, 1906, the plaintiff Emil Kuntz and one S. C. Rufty made application to and became members of the association by purchasing 25 shares of its stock, for which, on the same day, they received a certificate, and also made application for a loan of $700, which was granted, whereupon they assigned said stock to the association as collateral, and together with their wives, at Chickasha in this state, executed and delivered to the association a bond and mortgage on certain lots in that city, to secure the repayment of the loan.    One of the conditions of the mortgage provided that if they paid the principal sum, with interest thereon and the agreed premium for obtaining said loan, at the office of the said party of the second part in Denver, Colo., according to the tenor and conditions of a certain first mortgage bond of even date therewith, for the said sum and interest and premium, executed and delivered by them to the loan company, then the mortgage should be void.    The pertinent part of the first mortgage bond reads:

"Whereas, the Midland Savings & Loan Company has advanced and paid to the undersigned Emil Kuntz and Della Kuntz and T. C. Rufty and Lovie Rufty the full sum of ($700.00) seven hundred and no/100 dollars, upon (25) twenty-five shares of Class L of its capital stock, issued to and owned by the said Emil Kuntz and T. C. Rufty, evidenced by certificate numbered 10427, dated

December first (1st) A. D. 1909, and assigned as collateral security for the payment of said advancement, and which stock is to be paid and matured by monthly payments of ($10) ten and no/100 dollars, to said company by the makers hereof, or assigns, according to the certificate of incorporation, by-laws, rules, regulations and resolutions of said company governing said class of stock, reference to which is hereby made, and made a part of this obligation: Now, therefore, if the undersigned, their heirs, executors or assigns, or any of them, shall hereafter well and truly pay or cause to be paid to the said company, its successors or assigns, at its office in the city of Denver aforesaid, the sum of ($17.00) seventeen and no/100 dollars monthly, on or before the last day of each month, of which sum ($10) ten and no/100 dollars is the monthly installment due upon said shares of stock above described, and the sum of ($5.83) five and 83/100 dollars is the monthly interest due upon said principal sum, and the remaining sum of ($1.17) one and 17/100 dollars is the stipulated premium payable monthly upon said principal sum, also such fines as may accrue upon delinquent monthly payments upon said stock, interest and premium, according to the by-laws and resolutions of said company governing the same, said interest and premium and fines to be credited as earnings to the company, until said principal sum shall have been paid in full, by said shares of capital stock having reached their par value, or until otherwise paid as herein provided, then this obligation shall be void.

"But it is expressly agreed, that in the event of default in the payment of any of the monthly installments due upon said shares of stock, or of the monthly payments of interest and premium upon said principal sum, or in the payment of any fines imposed by said by-laws of said company, then, and in such event, the said company shall have the option of declaring the whole of said principal sum to be due and payable at once, and the payment thereof, together with all installments upon said shares of

stock, interest and premium, and fines, then due and unpaid, and any other charges or expenses advanced or incurred, may be enforced and recovered at once, and in case of suit in court an attorney's fee of ($70.00) seventy and no/100 dollars may be taxed in favor of said company in addition to all other costs.

"And it is expressly agreed, that in the event of default being made as hereinbefore mentioned, and the company shall exercise its option to declare the whole principal sum aforesaid to be due and payable, then the said shares of stock above described, together with all stock issued to the undersigned by said company, or transferred to it as collateral security for the payment of this bond, shall be forfeited and canceled by said company, and the value thereof, as fixed by the rules and regulations of the company, applied upon the payment of the whole indebtedness, and the said company may avail itself of the security given by mortgage, so far as the same will apply in payment of said indebtedness. And it is further expressly agreed that in no event shall the rate of interest be greater than ten (10) per cent. per annum, nor shall the combined rate of interest and premium exceed one (1) per cent. per month. ' *   *   *.

"This bond is delivered and its conditions are to be performed, within the State of Colorado, and it shall in all respects be governed by and construed according to the laws of said state, subject, however, to the lawful regulations of the State of Oklahoma; and its payment is secured by the assignment of the aforementioned shares of stock as collateral security, also by mortgage upon the real estate therein described, bearing even date herewith, duly executed and delivered by the undersigned to the said the Midland Savings & Loan Company."

The evidence further discloses that plaintiffs, pursuant to the terms of the contract and in conformity to the laws of the state and the by-laws of the association, from December, 23, 1909, to May 8, 1911, paid to the associa-

tion $169, $100 of which was applied on their stock, $52.06 on interest, $11.12 on premiums, $5.57 on fines, and $.25 for passbook. As stated, the last payment was received at the home office on May 8, 1911, but they did not include all payments due at that time, but included only those up to and including August, 1910, and a part of the September payment. No payments were made from May 8, 1911, up to and including September, 1911. For the September, 1911, payment, plaintiffs defaulted to the amount of $3.32. They also defaulted for all of the October payment and every month thereafter, in the sum of $69.96 as interest, and for the month of October, 1910, and every month thereafter, including September, 1911, at $1.17 per month, or the total sum of $14.04 as premiums, and for fines legally assessed against them, they defaulted to the amount of $10.65. They also owed the company $4.14 advanced for continuing the abstract of title, with interest thereon, making the total amount due the company and unpaid October 1, 1911, $801.11, according to the terms of the contract; but as plaintiffs had paid $100 on their stock upon which they were entitled to dividends at 6 per cent. per annum, or $102.25 from which defendant was entitled to deduct $50 withdrawal fee, this left $52.25 to be credited on the amount of $801.11 due defendant, which left the net amount due and unpaid on the debt $748.86.

On June 19, 1911, the property covered by the mortgage having been destroyed by fire and $1,327.31 having been paid plaintiffs by the insurance company, the whole amount was turned over to defendant, pursuant to the terms of the mortgage, on October 24, 1911. Out of that amount they deducted $748.86 in full settlement with plaintiffs, paid $136 to a certain lienholder, and sent a draft

payable to plaintiffs for $442.45 to the bank of Hobart, with instructions to turn it over to Mr. Kuntz upon the execution by him of certain releases; but he refused to receive the same, and when defendant refused to respond to his written demand to turn over to him $455.72, or double $227.86, claimed to have been paid as usury for the loan of $700 for one year, eight months, and 15 days, alleged to be interest at the rate of 9.46 per cent. per annum, plaintiffs brought this suit, not upon the theory that it was invalid under the laws of Colorado, but upon the theory that the contract was an Oklahoma contract, and as such was invalid here, in that it exacted a greater rate of interest than could be lawfully charged under the laws of this state. And, when on trial to the court such he found the contract to be, and that the interest was exacted in violation of Constitution, art. 14, sec 3, and Rev. Laws 1910, secs. 1004, 1005, and rendered and entered judgment for plaintiffs for the amount claimed, defendant brought the case here. The suit was defended on the ground that it was a valid Colorado contract, and that the same could not be attacked for usury in this state where the mortgaged premises are situate.

The contract, providing, as it does, that, "This bond is delivered and the conditions are to be performed within the State of Colorado," and that all payments shall be made at the city of Denver, is a Colorado contract and is governed by and should be construed according to the laws of that state. In *Legg et al. v. Midland Sav. & Loan Co.*, 55 Okla. 137, 154 Pac. 682, in the syllabus we said:

"A contract between such building and loan association and one of its members, made in the Territory of Oklahoma, to be performed in the State of Colorado, is governed by the law of the place of performance, and, if valid under the law of that state and not violative of

58—6

the public policy of said territory, is enforceable in the courts of this state."

In *Bennett v. Eastern Bldg. & Loan Ass'n*, 35 Atl. 684 (177 Pa. 233), in the headnotes it is said:

"A resident of Pennsylvania, on application made in that state to an agent of a New York building and loan association, became a member thereof, and obtained a loan from it, giving notes and bond therefor, secured by mortgage on Pennsylvania lands; all of the instruments describing the association as of 'Syracuse, N. Y.,' and declaring the notes payable at its office there. Held, that the contract was not governed by the usury laws of Pennsylvania."

Being a Colorado contract, the same cannot be attacked for usury where, as here, the land mortgaged to secure the loan is situate in this state. This we decided in *Midland Sav. & Loan Co. v. Henderson*, 47 Okla. 693, 150 Pac. 869, where we said:

"Where not forbidden by law, a contract of a foreign building and loan association, which is not usurious under the laws of the state where the association is domiciled, and where the obligations are payable, cannot be attacked for usury in the state where the land mortgaged is situated. *Bedford et ux. v. Eastern B. & L. Ass'n*, 181 U. S. 228, 21 Sup. Ct. 597, 45 L. Ed. 834. The parties having in good faith contracted that the laws of Colorado should control, and there being no statute in force in the Indian Territory forbidding non-resident building and loan companies from transacting business and making loans of the character under review, the parties must be held to a performance of their respective undertakings" (citing).

It is unnecessary to cite further in support of a doctrine so well established; but see: *Midland Sav. & Loan Co. v. Henderson, supra; Dygert et ux. v. Vermont Loan*

& *Trust Co.,* 94 Fed. 913, 37 C. C. A. 389; *Hieronymus et al. v. N. Y. Nat. Bldg. & Loan Ass'n* (C. C.) 101 Fed. 12. While it is, in effect, alleged that this was a scheme to defeat the usury laws of this state, there is no evidence reasonably tending to prove the allegation. As the interest here exacted exceeds the 10 per cent. allowed by the Constitution, but does not amount to the 12 per cent. allowed to be exacted by foreign building and loan associations doing business in this state (Rev. Laws 1910, sec. 1326), and the constitutionality of said statute, which permits foreign corporations to exact an amount of interest in excess of that allowed by the Constitution, is not questioned, the same is not here decided, but is expressly left open.

We are therefore of opinion that the court erred in rendering the judgment complained of, and for that reason the cause is reversed and remanded.

All the Justices concur.