# MIDLAND SAVINGS & LOAN CO. v. DEATON *et al.*

No. 6399.   Opinion Filed. April 18, 1916.

Rehearing Denied May 9, 1916.

(157 Pac. 285.)

1. **CORPORATIONS** — Foreign Corporations — **Powers.** A foreign corporation cannot exercise in this state any greater or different rights, powers, and privileges than are conferred on similar domestic corporations.

2. **BUILDING AND LOAN ASSOCIATIONS—Foreign Companies— Authority.** A foreign building and loan association. under article 9, section 44. Constitution, must comply with the same requirements for fixing premiums upon loans made by it as a domestic building and loan association.

3. **SAME—Loans—Effect.** A building and loan association lending money without complying with the laws regulating loans made by such associations. is not protected in such loan as a building and loan association, but the transaction becomes a simple loan of money.

4. **SAME—Application of Payments.** Where a foreign building and loan association lends money without requiring bids for the preference in obtaining the loan, as provided in section 1490. Comp Laws 1909 (section 1297. Rev. Laws 1910), it has no right to charge premiums : and premiums, dues upon stock. and fines paid under a loan agreement so made will be applied to the satisfaction of the loan.

5. **SAME—Loans—Interest.** Where a loan made by a building and loan association is held not to be usurious, but loses the protection of a building and loan contract because of failure to comply with the law governing the letting of loans as to premiums, and therefore becomes a simple loan. the association is entitled to interest at the contract rate. the same being within the legal contract rate of interest.

(Syllabus by Rummons, C.)

*Error from District Court, Pontotoc County;*
*Tom D. McKeown, Judge.*

Action by the Midland Savings & Loan Company against Alonzo J. Deaton and another. From a judg-

ment for plaintiff for less than the amount prayed for, plaintiff brings error. Modified and affirmed.

C. F. *Green* and A. J. *Bryant,* for plaintiff in error.

J. F. *McKeel,* for defendants in error.

Opinion by RUMMONS, C. This action was commenced by plaintiff in error against the defendants in error to recover a balance due upon a bond for the sum of $650 executed by defendants in error to plaintiff in error on September 1, 1910, and to foreclose a mortgage upon certain real estate in Pontotoc county executed by defendants in error to plaintiff in error to secure the payment of said bond. The parties will be hereinafter designated as they were in the court below. Plaintiff, in addition to pleading the bond and mortgage, and the default by defendants in the conditions thereof, pleaded the laws of Colorado governing building and loan associations, and the by-laws, rules, and regulations of plaintiff governing the contract between plaintiff and defendants and the stock subscribed for and issued to the defendant Alonzo J. Deaton. The defendants answered denying that they ever became owners of 25 shares of stock in plaintiff company, as alleged in the petition, and denying that they ever purchased or received such shares. They admitted making application for a loan of $650, and allege that the same was made in Pontotoc county to an agent of plaintiff in said county, that a mortgage was given on lands in said county, and that said transactions, each of them, occurred in the State of Oklahoma, and that the contract is an Oklahoma contract, and deny that they received any sum in excess of $600. Defendants further allege that their application for a loan was made and delivered in Oklahoma, and was an Oklahoma contract;

that plaintiff did not comply with the laws of Oklahoma governing building and loan associations, in that the money loaned was not let to the highest bidder in open meeting of the directors of said company, but that the premium was arbitrarily fixed in violation of the laws of Oklahoma; and that the interest installments, fines, penalties, forfeitures, and other payments by the defendants were received by the plaintiff for the purpose of covering up the usurious character of its transactions, and are in excess of the legal rate of interest allowed by the laws of the State of Oklahoma governing building and loan associations, and in violation thereof; and that all the payments made by defendants to the plaintiff should be deducted from the sums of money received by these defendants from the plaintiff; that defendants have paid plaintiff the entire amount due and are not indebted to the plaintiff in any sum whatever. To this answer plaintiff replied denying each material allegation therein contained. The cause was tried to the court, resulting in a judgment for plaintiff in the sum of $275.51 and $65 attorney's fees, and a decree of foreclosure of the real estate mortgage.

The court made findings of fact and conclusions of law as follows:

### "FINDINGS OF FACT.

"(1) The court finds that the said bond and mortgage was executed by the defendants in the State of Oklahoma, and the property described in said mortgage is located in Ada, Okla., and said bond is payable by its conditions in Denver, Colo., and recites that its conditions are to be performed in the State of Colorado, and purports to be a building and loan contract.

"(2)    The court finds that the defendant Alonzo J. Deaton made application for 25 shares of capital stock of said plaintiff company at par value of $2,500.

"(3)  The court finds that the relation of shareholder and association does not exist between the plaintiff and the defendants.    That the relation of lender and borrower exists between the plaintiff and the defendants.

"(4)    The court finds that the defendants received the sum of $634 in cash and credited with the sum of $15.50 upon the $650 loaned.

"(5)    The court finds that the loan was not made in compliance with the statutes of Oklahoma in this particular, to wit: The loan was not bid for in open meeting by the defendants.

"(6)    The court finds that the defendants have paid on said loan the sum of $357.09 on the $634, or that they by being credited with the $16.50 have paid $374.09 on the total $650."

### "CONCLUSIONS OF LAW.

"The court concludes as a matter of law that the plaintiff having failed to comply with the laws of the State of Oklahoma relative to building and loan associations does not come within the protection of the laws relating to building and loan associations in the State of Oklahoma.

"That the relation of lender and borrower only existing between the plaintiff and the defendants, and there being no proof as to what the laws of Colorado are relating to usury and the rate of interest attempted to be collected, that the bond sued on, while being a Colorado contract, will be construed according to the laws of Oklahoma in the absence of proof of the laws of the State of Colorado, for the reason they are presumed to be the same as the laws of the State of Oklahoma in regard to the rate of interest.

"The court therefore concludes that the defendants are entitled to be credited upon the principal sum in the amount paid, which is $374.09, to be applied on the $650, which leaves a balance of $275.51.

"That the contract sued on is not usurious for the reason that there is no proof showing that the contract was entered into corruptly, with the intent to receive greater rate of interest than that provided by law."

The plaintiff being aggrieved at the judgment of the court, he brings this proceeding in error, seeking to reverse this judgment.

There seems to be no dispute as to the material facts in this case. The defendants in September, 1910, subscribed for 25 shares of the capital stock of plaintiff, payable in installments of $10 per month, and at the same time applied for a loan upon their real estate in Ada for the sum of $700. They were granted a loan by plaintiff in the sum of $650, and executed the bond and mortgage sued on for the same, and at the same time pledged their 25 shares of stock as collateral security for such loan. The plaintiff deducted from the amount of the loan the first month's installment upon the stock, and the first month's installment of interest, and premium. This sum is variously referred to in the findings of the court and the briefs of the parties as $15.50 and $16.50. It seems, however, to be undisputed that defendants received $634 at the time the loan was made. The bond executed by defendants provides that the defendants shall pay to plaintiff the sum of $16.50 monthly, of which sum $10 is the monthly installment due upon said shares of stock, and the sum of $5.41 is the monthly interest due upon said sum, and the remaining sum of $1.09 is the stipulated premium payable monthly upon said principal sum, also

such fines as may accrue upon delinquent monthly payments upon said stock, interest, and premium, according to the by-laws and resolutions of said company governing the same; said interest and premium and fines to be. credited as earnings to the company until said principal sum shall have been paid in full by said shares of capital stock having reached their par value, or until otherwise paid as therein provided.   The bond further provides as follows:

"This bond is delivered and its conditions are to be performed within the State of Colorado, and it shall in all respects be governed by and construed according to the laws of said state, subject, however, to the lawful regulations of the State of Oklahoma."

Plaintiff claimed to be entitled to recover the principal of the loan, $650; unpaid interest and premium, $53; fines legally assessed, $21.94; abstract fees, $1.50; and attorney's fees stipulated for in the bond, $65—making the total of $791.44, upon which sum the defendants were entitled to credit for the withdrawal value of the shares of stock, which value was determined by taking all payments, being 23 in number, of $10 each, amounting to $230, and adding dividends thereto at 6 per cent. per annum, making a total of $245.85, and from this deducting $2 per share as a withdrawal fee amounting to $50, leaving a net balance of $195.85 to be credited upon the indebtedness claimed by plaintiff, which left the amount due plaintiff the sum of $595.59.

The court found that the defendants had paid on said loan $357.09, and by being credited with the first payment, which was deducted from the $650 loan, they were entitled to a credit of $374.09; and there seems to be no dispute as to the correctness of these figures as to the amount paid by defendaants.   It further appears that immediately be-

fore beginning this action the plaintiff canceled and withdrew the shares of stock issued to defendant Alonzo J. Deaton and credited his loan with the withdrawal value thereof.

Plaintiff assigns several grounds of error in its brief, but for the purposes of this opinion they may be considered under one assignment, that the court erred in construing the bond and mortgage and the contract between plaintiff and defendants according to the laws of Oklahoma, and in not interpreting them according to the laws of Colorado, as a result of which plaintiff's recovery was too small.

Plaintiff places its chief reliance for a reversal of this cause on the case of *Midland Savings & Loan Co. v. Henderson and Beats*, 47 Okla. 693, 150 Pac. 868. This case has been followed by this court in the case of *Legg v. Midland Savings & Loan Co.*, 55 Okla. 137, 154 Pac. 682, and in the case of *Midland Savings & Loan Co. v. Kuntz*, 58 Okla. —, 158 Pac. 604. In *Midland Savings & Loan Co. v. Henderson, supra*, this court says:

"* * * Under section 6, p. 125, Laws Colo. 1897, building and loan associations organized within that state and under its laws may loan its accumulations, when the by-laws of the association so provide, without the necessity of competitive bidding.

"As a general rule, it is within the power of the contracting parties, by the express terms of their contract or undertaking, to establish the place according to the laws of which the validity and construction of the contract shall be determined."

In *Legg v. Midland Savings & Loan Co., supra*, this court follows the Henderson Case and lays down the same

rule.  In *Midland Savings & Loan Co. v. Kuntz, supra,* this court says:

"A contract between a building and loan association and one of its members made in this state, to be performed in the State of Colorado, is governed by the laws of the place of performance; and if valid under the laws of that state, when executed, cannot be attacked in this state, where the land mortgaged to secure the contract debt is situated, for usury exacted in violation of Constitution, art. 14, sec. 3, and Rev. Laws 1910, secs. 1004 and 1005."

The only question, it seems to us, involved in the determination of this cause is, whether or not the court erred in holding that the plaintiff, having failed to comply with the laws of Oklahoma relative to building and loan associations, in not submitting the loan to be bid for in open meeting, does not come within the protection of the laws relating to building and loan associations, and that the relation of shareholder and corporation does not exist between defendants and plaintiff, and that their only relation is that of borrower and lender.  The court having found that this transaction was not tainted with usury for the reason that the contract was not entered into corruptly with intent to violate and evade the usury laws, which finding and conclusion of law, we think, is supported by the facts, we need not consider that question.

The difficulty in applying the cases of *Midland Savings & Loan Co. v. Henderson, supra, Legg v. Midland Savings & Loan Co., supra,* and *Midland Savings & Loan Co. v. Kuntz, supra,* to this case lies in the fact that the contracts entered into in those cases were in each case made before the adoption of our Constitution and the coming of statehood.  In the Henderson Case and the Kuntz Case the contracts were entered into in what was

then Indian Territory. In the Legg Case the contract was entered into in Oklahoma Territory.

The plaintiff was doing business in this state under the provisions of an act of the territorial Legislature adopted in 1905 (Laws 1905, c. 10, art. 5), and which, so far as it was not repugnant to the Constitution, was continued in force after statehood. If this act, which relates to foreign building and loan associations, is still in full force and effect, we have no doubt the position of plaintiff is correct. While it is urged by defendants that the bond in controversy providing that it shall in all respects be governed by and construed according to the laws of Colorado, *subject, however, to the lawful regulations of the State of Oklahoma,* therefore the laws of Oklahoma relating to building and loan associations entered into and became a part of the contract, and that as the laws of Oklahoma relating to domestic building and loan associations required that all loans should be made at an open meeting of the directors by bids from the shareholders for priority in receiving the loan, it was requisite that this method of making the loans should be followed by the plaintiff. While we think the contention of defendants that the laws of Oklahoma relating to foreign building and loan associations entered into and governed the contract between plaintiff and the defendants is correct, yet, if the act of 1905 still continues in full force, we cannot agree with their other contention, that plaintiff would be bound to comply with the laws relating to local associations. The act of 1905 was an independent and complete act governing and regulating foreign building and loan associations, and nowhere in it is contained any restriction upon the method of making loans, other than the provisions of the by-laws of such foreign

building and loan associations; and it having been determind in the Henderson Case, *supra,* that the method pursued by plaintiff in fixing the premium upon this loan was in accordance with the laws of Colorado and the by-laws of plaintiff, the trial court was, beyond doubt, in error in holding that plaintiff was not entitled to the protection accorded the building and loan associations because it failed to let this loan by open bids, if the act of 1905 continued in full force.

It seems that in none of the three cases above referred to was the effect of the clause, "subject, however, to all lawful regulations of the State of Oklahoma," contained in the bond sued on by plaintiff, upon the interpretation of the contract between plaintiff and the defendants considered. It does not appear in either the Henderson Case or the Legg Case whether or not such clause was in the contract under consideration by this court. In the Kuntz Case this clause was contained in the contract set out in the opinion of the court, but as that case arose before statehood in the Indian Territory it was not considered by the court. This court, however, in that case expressly leaves open the question of the constitutionality of the act of 1905, which permits foreign corporations to exact an amount of interest in excess of that allowed by the Constitution.

We think the determining question in this case is, what effect the adoption of the Constitution had upon the act of 1905, if any? Our Constitution (art. 9, sec. 44) provides as follows:

"No foreign corporation shall be authorized to carry on in this state any business which a domestic corporation is prohibited from doing, or be relieved from compliance with any of the requirements made of a similar domestic

corporation by the Constitution or laws of the state. Nothing in this article, however, shall restrict or limit the power of the Legislature to impose conditions under which foreign corporations may be licensed to do business in this state."

Comity between the states requires that foreign building and loan associations be allowed to enforce their valid contracts made in any jurisdiction, but it does not require the court of a state, other than that in which an association is incorporated, to enforce a foreign contract repugnant to the public policy of the forum; nor does it require that the association be granted greater privileges in making contracts within a foreign state than are accorded domestic associations. 4 R. C. L. sec. 43; *Floyd v. National Loan Co.*, 49 W. Va. 327, 38 S. E. 653, 54 L. R. A. 536, 87 Am. St. Rep. 805. In the case last cited the Supreme Court of West Virginia, interpreting a building and loan contract which provided that it should in all cases be construed according to the laws of the State of Michigan and the articles of incorporation and by-laws of said association, the provisions whatsoever of the laws of any state to the contrary notwithstanding, quotes the statute of West Virginia respecting foreign corporations, which is as follows:

"Such corporations, so complying, shall have the same rights, powers, and privileges, and be subject to the same regulations, restrictions and liabilities that are conferred and imposed by this and the fifty-second and fifty-third chapters of this Code, and by chapter 20 of the acts of 1885, on corporations chartered under the laws of this state."

The court then says:

"Can there be any doubt that the effect of this provision is to permit foreign corporations to have the same

rights, powers, and privileges that are conferred upon
domestic corporations, and no greater or different rights,
powers, and privileges?   If that is not its meaning, what
can be the legal effect of the clause, 'subject to the same
regulations, restrictions and liabilities that are' imposed
upon domestic corporations?   Clearly, it must operate
as a prohibition upon the exercise by a foreign corpora-
tion of any greater or different rights, powers, and privi-
leges than are permitted to domestic corporations."

The Code of West Virginia authorized building and
loan associations to let their loans by bids for priority;
such premium bid to be either in a lump sum to be de-
ducted from the loan or payable in periodical installments.
The by-laws of the appellee in that case provided:

"The amount of premium bid shall be taken out of the
amount borrowed, but it is expressly provided that, after
the 15th of September, A. D. 1891, borrowers competing
for loans from this company shall bid as a premium a
stated amount per share, payable monthly on the last
Saturday of each month.   Said stated amount per share
per month to be paid each month during the existence of
the shares of stock borrowed upon."

Construing the Code of West Virginia and the by-
laws of the appellee, the court says:

"There is a difference between a prem'um, the amount
of which is ascertained and fixed at the time the loan is
made, and then divided into installments and paid period-
ically, and a premium of a certain sum to be paid on each
share each month for an indefinite and uncertain length
of time."

The court held that where an association is authorized
by statute to operate upon one of the systems respecting
premium, it cannot adopt the other without making the
contract unlawful to the extent of the excess of the res-

ervation above the legal rate of interest. The court further says:

"Measured by the standard of our statute, this association is found by the method of its operations and the nature of its contracts not to have the character of a building association, and cannot, therefore, be permitted to enforce its contract as a building association contract. * * * If the powers they assume to exercise are the same as, or within and not beyond, those permitted to our own associations, they are enforceable; otherwise they are not."

In view of the constitutional provision above quoted we are forced to the conclusion that the act of the territorial Legislature of 1905, which permitted foreign building and loan associations to fix the premium to be paid by borrowers for loans in such manner as their by-laws might provide, is repugnant to the Constitution, and therefore inoperative to give to a foreign building and loan association the right to fix the premium in any other manner than that provided by our laws governing domestic building and loan associations. *Washington Inv. Ass'n v. Stanley,* 38 Or. 319, 63 Pac. 489, 58 L. R. A. 816, 84 Am. St. Rep. 793; *Falls v. U. S. Sav. L. & B. Co.,* 97 Ala. 417, 13 South. 25, 24 L. R. A. 174, 38 Am. St. Rep. 194.

Having reached this conclusion, the law is well settled that a building and loan association lending money without requiring bids for a preference of obtaining the loan has no right to charge premiums, and that a contract between a borrower and a building and loan association, in which a premium is arbitrarily fixed, is not a building and loan contract, but an ordinary loan, and that all premiums and dues paid under such loan agreement will be applied to discharge the loan. *Ætna Building & Loan*

*Ass'n v. Rouch,* 32 Okla. 735, 124 Pac. 24; *Lindsay v. Chickasha Building & Loan Ass'n,* 39 Okla. 12, 130 Pac. 570. This court in the cases last above cited has determined both that in case a loan is made without submitting it to bids for the preference the borrower is entitled to credit for all premiums and dues paid, and that in the event the stock held by the borrower and pledged to secure the loan is canceled and forfeited the borrower is entitled to credit upon the loan for all dues paid upon such stock.

We therefore conclude that the trial court was right in his conclusions of law; but we think the judgment rendered upon his findings of fact and conclusions of law is erroneous in that the plaintiff was not allowed any interest upon the money lent, but the payments made by the defendants were deducted from the principal sum and judgment rendered for the balance without interest. We think in this the court erred. The contract not being usurious, and being only repugnant to our Constitution and laws as to the premium charged, and as to the application of the payments made upon stock, the plaintiff was entitled to the interest provided for in the contract, and judgment should have gone for it for the principal sum of $650, with interest thereon in the sum of $5.41 per month, after deducting the sums paid by defendants as dues upon their stock and as premium, with interest at the same rate from the date of such payments. This error, however, we do not think requires a reversal of this cause, but only that the judgment should be modified as above suggested. This cause should therefore be affirmed, with directions to the trial court to enter judgment for the plaintiff for the sum of $650, with interest thereon at the rate of $5.41 per month from the date of the last payment

of interest by defendants thereon, less the payments made by defendants as dues upon the shares of stock, and as premiums, and as fines, with interest thereon at the same proportionate rate as the principal bears, from the date of payment to the date of judgment, and that plaintiff recover an attorney's fee of $65.

By the Court: It is so ordered.