## MIDLAND SAVINGS & LOAN CO v. LANDRUM.

No. 6976—Opinion Filed July 25, 1916.

On Rehearing, Oct. 8, 1919.

(175 Pac. 545.)

### Building and Loan Associations—"Usurious Contract"—Competitive Bidding — Foreign Law.

A foreign building and loan association of the state of Colorado sold certain of its stock to a citizen of Oklahoma Territory, prior to the admission of the state, and made L. a loan secured by the stock and a mortgage covering lands in Oklahoma Territory. The contract provided for certain premiums and withdrawal fees which in total did not exceed 12 per cent. per annum upon the loan. It was provided that the contract should be performed in and construed according to the laws of Colorado, subject to the lawful restriction of the territory of Oklahoma. Held, that under the laws of Colorado as pleaded and proven, and the laws of the territory of Oklahoma in force at the time the contract was made, the charging and collecting of the premium and withdrawal fees did not make the contract "usurious." Held, further, that it was not necessary that the loan be let or premium fixed by competitive bidding.

(Syllabus by Burford, C.)

Appeal from County Court Oklahoma County; John W. Hayson, Judge.

Action by A. U. Landrum against the Midland Savings & Loan Company to recover penalty for usury. Judgment for plaintiff, and defendant appeals. Reversed, with directions.

L. J. Miller and A. J. Bryant, for plaintiff in error.

H. A. Kroeger and H. A. King, for defendant in error.

Opinion by BURFORD, C. This was an action instituted in a justice court and appealed and tried de novo in the county court of Oklahoma county. The petition alleged a loan of money by defendant building and loan association to plaintiff; that usury had been charged, in that the loan was not let by competitive bidding; that certain premiums and withdrawal fees were

exacted as a cover for usury; and that demand for the return of the usury had been made and refused. Defendant answered setting up the various stock certificates, loan bond, mortgage, etc., evidencing its indebtedness, and pleaded that by its terms the contract was to be performed in Colorado, the home state of the defendant, and to be governed by the laws of Colorado subject to the lawful restrictions of the territory of Oklahoma. The laws of Colorado and the by-laws of defendant company applicable to the class of stock sold plaintiff were set out in full. It was further pleaded that neither the contract nor the charge made under it were unlawful or usurious, and judgment of dismissal was prayed. The material parts of the contract are hereinafter set out. A trial was had to the court without the intervention of a jury, resulting in judgment for plaintiff, from which judgment defendant appeals.

It appears from the undisputed facts that the plaintiff, A. U. Landrum, purchased certain shares of stock in the defendant company which he pledged as collateral security for the loan of $1,000 evidenced by a bond executed by him to the company and further secured by a real estate mortgage. The bond provided for interest upon the loan in the sum of $6.25 per month and premium at the rate of $3.75 per month, and further provided:

"And this bond may be fully repaid at any time and in case the undersigned shall desire to repay such loan they shall be entitled to a credit of the withdrawal value of such shares as fixed by the terms of said certificate less all charges for insurance, taxes and other advances that may have been made by the company. * * *"

The stock certificate provided:

"The cash surrender value of this certificate previous to its maturity shall be the full amount of the monthly installments paid, plus dividends thereon at not less than 6 per cent. per annum, for the actual time the company has had the use of the money during continuance of regular payment, less a fee for the privilege of withdrawing prior to the maturity of the stock of two (2) dollars per share for the benefit of the remaining members to assist in paying expenses of the company."

The by-laws of the company were to the same effect. The stock certificate provided that the rights therein given were "subject to the provisions of the laws of the state of Colorado, the articles of incorporation and the by-laws, rules and regulations of this company governing this class of stock and the options and privileges upon the back thereof, all of which are hereby referred to and made a part of this contract." The bond further provided:

"This bond is delivered and its conditions are to be performed within the state of Colorado, and it shall in all respects be governed by and construed according to the laws of said state subject, however, to the lawful regulations of the territory of Oklahoma."

The mortgage provided:

"This mortgage is delivered in the state of Colorado and is to be construed according to its laws, subject to the lawful restrictions of the territory of Oklahoma, so far as it relates to or affects the validity of the first mortgage bond secured hereby."

The various contracts of this same company have recently been before this court in a number of cases. In Midland Savings & Loan Co. v. Henderson et al., 47 Okla. 693, 150 Pac. 868, L. R. A. 1916D, 745, there was under consideration a contract made in the Indian Territory prior to statehood. The stipulations of the contract were much the same as in the case at bar, and the same statutes of Colorado were pleaded there as here. However, in the Henderson Case the contract did not contain the stipulation in reference to the restrictions of the laws of Oklahoma, but provided that the contract should be construed according to the laws of Colorado. It was there held that the parties might lawfully agree that the laws of Colorado should govern the contract, there being nothing in the statutes or public policy of the Indian Territory forbidding such a contract; that under the laws of Colorado interest and premium might be charged in accordance with the by-laws of the association; that thereunder there was no necessity for competitive bidding; that the laws of the Indian Territory forbidding the charging of interest in excess of 10 per cent. did not affect the contract, "for the reason that the rate of interest paid by Beats was contingent upon the length of time required to mature the shares of stock"; and that since the contract was valid it remained "unaffected by any change in our form of government brought about by the admission of the state into the Union," or by the provisions of section 1326, Rev. Laws 1910.

In Legg v. Midland Savings & Loan Co., 55 Okla. 137, 154 Pac. 682, a question arising under a similar form of contract executed in Oklahoma Territory prior to statehood was under consideration. The doctrine of Midland Co. v. Henderson, supra, was followed and approved, and it was further held that the provisions of the contract (being with a foreign building and loan company)

and the lack of competitive bidding did not violate the public policy of the territory.

In Midland Savings & Loan Co. v. Kuntz, 58 Okla. 156, 158 Pac. 604, the contract under consideration was executed in Oklahoma. It contained similar provisions to those in the Henderson and Legg Cases, and the additional stipulation in regard to the laws of Oklahoma contained in the contract involved in the case at bar. It was there held that the contract was governed by the laws of Colorado; but the effect of the stipulation in regard to the laws of Oklahoma was not raised or considered, and the question of the constitutionality of section 1326, Rev. Laws 1910, allowing foreign building and loan associations to charge interest at 12 per cent., being in excess of the constitutional rate, was expressly reserved.

In Midland Savings & Loan Co. v. Deaton, 57 Okla. 622, 157 Pac. 285, the contract under consideration was made after statehood and contained the provision in relation to the effect of the laws of Oklahoma. It was there held that under section 44, art. 9, of the Constitution, regulating the terms upon which a foreign corporation might do business in the state, the foreign building and loan association could exercise no greater powers or privileges than a local association, and that therefore any premium charged must be dependent upon competitive bidding, in the absence of which the whole contract would be construed as a simple loan of money and the premium applied to the liquidation of the indebtedness.

In the case at bar, we have a contract made in Oklahoma Territory, prior to statehood, in which the parties contracted that it was to be performed in and governed by the laws of Colorado subject to the reasonable regulations of the state of Oklahoma. Under the doctrine of the Henderson, Legg, and Kuntz Cases, the parties could lawfully so agree, competitive bidding upon such a loan was unnecessary, and there was nothing in the laws of Colorado governing such association repugnant to the public policy of the state of Oklahoma. Legg v. Midland Co., supra. Clearly the contract is to be construed under the terms of the agreement made by the parties, i. e., according to the laws of Colorado, except as they might be in conflict with the provisions of the statutes of Oklahoma Territory applicable thereto. The contract being executed prior to statehood, the constitutional provisions and the statute of 1909 had not yet come into existence. Under the decisions above cited, the contract was valid under the laws of Colorado as pleaded in this cause, and we cannot consider any such laws not plead-

ed and proven. These statutes we have not quoted, as they are set out in full in the previous decisions above cited. It remains to be seen, therefore, if there were any statutes of the territory of Oklahoma in conflict with the laws of Colorado applicable to the contract. It is to be here noted that the statutes of the territory of Oklahoma to be considered—bearing in mind that this contract was executed prior to statehood—are not those applicable to local building and loan associations, as contended by defendant in error, but those relating to foreign building and loan associations doing business in this state. As was said in Midland Co. v. Deaton, supra:

"The plaintiff was doing business in this state under the provisions of an act of the territorial Legislature adopted in 1905 (Laws 1905, c. 10, art. 5), and which, so far as it was not repugnant to the Constitution, was continued in force after statehood. If this act, which relates to foreign building and loan associations, is still in full force and effect, we have no doubt the position of plaintiff is correct. While it is urged by defendants that the bond in controversy provided that it shall in all respects be governed by and construed according to the laws of Colorado, subject, however, to the lawful regulations of the state of Oklahoma, therefore the laws of Oklahoma relating to building and loan associations entered into and became a part of the contract, and that as the laws of Oklahoma relating to domestic building and loan associations required that all loans should be made at an open meeting of the directors by bids from the shareholders for the priority in receiving the loan, that it was requisite that this method of making the loans should be followed by the plaintiff. While, we think, the contention of defendants that the laws of Oklahoma relating to foreign building and loan associations entered into and governed the contract between plaintiff and defendants is correct, yet, if the act of 1905 still continues in full force, we cannot agree with their other contention, that plaintiff would be bound to comply with the laws relating to local associations. The act of 1905 was an independent and complete act governing and regulating foreign building and loan associations, and nowhere in it is contained any restrictions upon the method of making loans, other than the provisions of the by-laws of such foreign building and loan association; and it having been determined in the Henderson case, supra, that the method pursued by plaintiff in fixing the premium upon this loan was in accordance with the laws of Colorado and the by-laws of plaintiff, the trial court was, beyond doubt, in error in holding that plaintiff was not entitled to the protection accorded the building and loan associations because it failed to let this loan by open bids, if the act of 1905 continued in full force.''

In the Deaton Case the laws of the territory of Oklahoma of 1905 were held not in force after statehood. As above stated, the contract here in question was executed prior to the admission of Oklahoma into the Union. Contained in the laws relating to foreign building and loan associations (sections 1326, 1327, Rev. Laws 1910, adopted in 1905) are the provisions authorizing such foreign companies to charge the withdrawal fees and premiums here collected provided the combined rate of interest and premium does not exceed 12 per cent. per annum. Under these statutes as held in the Legg Case, supra, the contract when made under the laws then in force was valid and enforceable in Oklahoma and was not subject to the plea of usury, since the premium and interest did not exceed 12 per cent. per annum. Defendant in error in his brief makes up the account stated as follows:

"There was $1,582.20 paid upon this loan of $1,000, during the period from January 11, 1907, to February 26, 1912; that of this sum there was applied as so-called stock dues the sum of $720, there was applied as interest $324.38, there was applied as premium the sum of $230.62, and there was applied to fines and penalties the sum of $13.40, and of the whole sum paid there was only $233.80 applied upon the principal of $1,000 of this loan."

Upon these figures the total amount of interest and premium did not exceed the rate of 12 per cent. per annum allowed by section 1326, Rev. Laws 1910, supra. Clearly, therefore, under the laws then in force at the time the contract was executed, no unlawful charge was made upon the loan here involved. Neither party urges in their brief that the provisions of the Constitution and laws enacted subsequently to the inception of the contract are in any wise applicable thereto, and no question in relation to the effect of such laws is considered or decided.

The cause is reversed, with directions to the trial court to dismiss the action.

By the Court: It is so ordered.

### On Rehearing.

PER CURIAM. Upon full consideration of the petition for rehearing, the court concurs in the views expressed in the opinion prepared by the commission. The petition for rehearing is therefore denied.