### MIDLAND SAVINGS & LOAN CO. v. TUOHY et al.

No. 6975—Opinion Filed Jan. 29, 1918.

Second Rehearing Denied April 16, 1918.

(170 Pac. 244.)

1. **Corporations — Foreign Corporations — Powers.**

A foreign corporation cannot exercise in this state any greater or different powers and privileges than are conferred on similar domestic corporations.

2. **Building and Loan Associations — Foreign Companies—Authority.**

A foreign building and loan association under article 9, § 44, of the Constitution, must comply with the same requirement for fixing premiums upon loans made by it as a domestic building and loan association.

3. **Same—Loans—Effect.**

A building and loan association lending money without complying with the laws regu-

lating loans made by such associations is not protected in such loan as a building and loan association, but the transaction becomes a simple loan of money.

### 4. Usury—What Constitutes.

"Usury" is the taking of a greater premium for the use of money loaned than the law allows, and if the lender takes, receives, reserves, or charges a greater rate than 10 per cent. per annum, he forfeits twice the amount of the interest which has been agreed to be paid thereon; and, whatever the form of the transaction may be, it is usury if the rate of interest taken, charged, reserved, or received is unlawful.

### 5. Same—Action to Recover—Constitutional and Statutory Provisions.

Section 1005, Rev. Laws 1910, embraces the provisions of article 14, § 3, of the Constitution, except the phrase "when knowingly done" being omitted, and does not require that a party bringing an action to recover usury paid should show that the party taking, reserving, receiving, or charging more than the legal rate of interest upon money loaned had knowledge of the usurious character of the contract.

### 6. Same—Unlawful Intent—Inference.

Whenever the usurious character of the transaction is revealed on the face of the instrument, the unlawful intent to charge or receive an illegal rate of interest for the money loaned will be inferred from the instrument itself.

(Syllabus by Pope. C.)

Error from District Court, Oklahoma County; James W. Steen, Assigned Judge.

Action by C. J. Tuohy and Laura Tuohy against the Midland Savings & Loan Company to recover usury exacted and received by the company from the Tuohys. Judgment for plaintiffs, and defendant brings error. Affirmed.

Loyal J. Miller and A. J. Bryant, for plaintiff in error.

Chambers & Priest and Chas. H. Garnett, for defendants in error.

Opinion by POPE. C. On the 1st day of December, 1911, the Midland Savings & Loan Company, a Colorado corporation, loaned in Oklahoma to C. J. Tuohy and Laura Tuohy, citizens of Oklahoma, the sum of $3,000, and had the same secured by mortgage on Oklahoma real estate. The contract involved stock premiums, principal and interest. The corporation in the manner of building and loan associations prepared the contracts and inserted therein certain provisions which were to its liking. Among these was a provision that the interest on the loan should never exceed 10 per cent., although the contract required the Tuohys to subscribe to 105 shares of capital stock of said association to be assigned to the company as collateral security for the payment of said note, and to be paid for and matured by monthly payments of $42, in addition to the monthly payment of $25 interest upon said principal sum of $3,000; further required the payment of premium and interest; and another provision was that the contract was to be performed in the state of Colorado, and was to be governed by the laws of Colorado.

On April 10, 1913, the Tuohys paid off the mortgage, surrendered the stock, and in so doing they met the demands of the company, and thereafter they made a demand on the company for the return of the alleged usury paid in the sum of $349.69, and the company refused to pay the same. The Tuohys then brought suit against the company for usury paid, in the sum of $1,317.86. The cause was tried to the court, with the result that a judgment was for the Tuohys for $825, $100 attorney's fees and costs, from which judgment the company brings error.

It is perhaps true that all of the parties believed they were entering into a building and loan contract. Whether or not the transaction was of such character we cannot agree. The fact that one party to the contract was a building and loan association does not make it a building and loan transaction. Whether it was of that character depends entirely on whether it was authorized by the laws of the state of Oklahoma. The record discloses that, while the contract recites that it is to be construed according to the laws of Colorado, the statute of Colorado covering such contracts was neither pleaded nor proved. The contract therefore will be regarded as an Oklahoma contract.

It is the settled law in this jurisdiction that a foreign corporation cannot exercise in this state any greater or different rights, powers, and privileges than are conferred upon similar domestic corporations. Midland Savings & Loan Company v. Deaton et. al., 57 Okla. 622, 157 Pac. 285.

The record discloses that the company did not require bids for the preference in obtaining the loan in question as required by Rev. Laws 1910, § 1297. Plaintiff in error, having failed to comply with the laws of Oklahoma relative to building and loan associations in not submitting the loan to be bid for in open meeting, does not come within the protection of the laws relating to building and loan associations, and that the relation of shareholder and corporation does

not exist between defendant and plaintiff.

In the Midland Savings & Loan Company v. Deaton, supra, the court said:

"Where a foreign building and loan association lends money without requiring bids for the preference in obtaining the loan, as provided in section 1490, Comp. Laws 1909 (section 1297, Rev. Laws 1910), it has no right to charge premiums:" and "a building and loan association lending money, without complying with the laws regulating loans made by such associations, is not protected in such loan as a building and loan association, but the transaction becomes a simple loan of money."

It is contended by the defendants in error that the plaintiff in error claimed and exacted from them in the payment of said loan an amount greatly in excess of the maximum contract rate, lawfully to be attached, which was 10 per cent. as provided by section 1004, Rev. Laws 1910, which is as follows:

"Legal and Contract Rates of Interest.— The rate of interest shall not exceed six per cent., in the absence of any contract as to the rate of interest, and by contract parties may agree upon any rate to exceed ten per cent. per annum. Said rates of six and ten per cent. shall be respectively the legal rate and the maximum contract rates of interest."

Section 1005, Rev. Laws 1910, is as follows:

"Actions to Recover Forfeiture.—The taking, receiving, reserving or charging a rate of interest greater than is allowed by the preceding section shall be deemed a forfeiture of twice the amount of interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case a greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover from the person, firm or corporation taking or receiving same, in an action in the nature of an action of debt, twice the amount of the interest so paid: Provided, such action shall be brought within two years after the maturity of such usurious contract: Provided, further, that before any suit can be brought to recover such usurious interest, the party bringing such suit must make written demand for return of such usury."

As stated above, the only relation existing between the parties was that of borrower and lender. The only consideration passing from the loan company to the Tuohys was the loan of $3,000, which was to be paid back in any event, and to that end was secured by mortgage on real estate, and the amount of the interest exacted and received by the lender and paid by the borrower

amounted to more than 10 per cent. Same being contracted for and exacted, we are of the opinion that the transaction is in every way tainted with usury, unless there be merit in the plaintiff in error's contention that the usury was not knowingly charged and exacted, and the penalty of usury should not be inflicted, unless corrupt interest is shown. The trial court in this case found as a fact that the defendant company "knowingly and corruptly" charged, collected, and received usurious interest upon the loan of money made to the Tuohys.

It is contended by the plaintiff in error that there was not sufficient evidence introduced at the trial to support the finding by the trial court of corrupt intent, and that the usurious contract was knowingly entered into; that the only evidence introduced was the contract itself; and that no presumption arises from the contract alone of corrupt intent, but is one of the elements of usury which must be pleaded and proven.

We cannot agree with this contention. Article 14, § 3, of the state Constitution, to wit:

"The taking, receiving reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case a greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover from the person, firm, or corporation taking, or receiving the same, in an action in the nature of an action of debt, twice the amount of the interest so paid: Provided, such action shall be brought within two years after the maturity of such usurious contract: Provided, however, that this section may be subject to such changes as the Legislature may prescribe"

—is a mere statute for the reason that it has been made subject to legislative changes, and the legislative changes have been made. Rev. Laws 1910, § 1005, supra, which was in force at the time the contract under consideration was entered into, it will be observed, is very similar to the constitutional provision both in substance and in form, but omitted the phrase "when knowingly done" or any reference to knowledge or intent. This change cannot be overlooked. We cannot impute to the Legislature no conscious purpose in omitting this phrase contained in the Constitution. Much more natural is the view that the Legislature intended to make the usury law more effective by taking away doubtful defenses, and that the usury law

should be within the almost universal rule that an acting party must know the legal effect of his acts.

The contract under consideration on its face provides for the payment of more than the legal rate of interest as prescribed by the laws of the state. The additional burden of the payment of $42 monthly on certain stock subscribed for, and for fines, makes it perfectly clear that the lender is to receive and the borrower is to part with a sum of money, besides the lawful interest on the sum loaned; and where there is no consideration shown other than the loan for this additional advantage to the lender, the influence of a usurious contract is so irresistible that it is properly regarded as an inference of law. It was said in the Owens Case, 2 Pet. 537, 7 L. Ed. 508, that a profit made or a loss imposed upon the necessity of the borrower, whatever form, shape, or disguise it may assume where the treaty is for a loan and the capital is to be returned at all events, has always been adjudged to be so much profit upon the loan and to be violative of those laws which limited the lender to a specified rate of interest.

In view of the conclusion reached by this court in the case of Aetna Building & Loan Association v. Lillie A. Harries et al., 67 Okla. 257, 170 Pac. 700, decided at this term, the contract is clearly usurious, and, the usurious character of the transaction being revealed on the face of the instrument, the unlawful intent to charge or receive an illegal rate of interest for the money loaned will be inferred from the instrument itself.

In Union Trust Company v. Radford et al., 176 Mich. 50, 141 N. W. 1091, the court said:

"While the question of intent is to be considered in determining whether or not a contract is usurious, it will not govern where the contract is unambiguous and its legal meaning clear, for the parties must be deemed to have intended the result expressed."

To the same effect the court in case of McRackan v. Bank, 164 N. C. 24, 80 S. E. 184, 49 L. R. A. (N. S.) 1043, Ann. Cas. 1915D, 105, says:

"Where there is negotiation for a loan of money, and the borrower agrees to return the amount advanced at all events, it is a contract of lending, and however the transaction may be shaped or disguised, if a profit or return beyond the legal rate of interest is intended to be made out of the necessities or improvidence of the borrower, or otherwise, the contract is usurious," and "when the illegal purpose stands clearly revealed on the face of the instrument, as in

this case, no further inquiry into the intent is required."

In the case of Darnden v. Schuessler, 154 Ala. 372, 45 South. 130, the court said:

"Where a contract is on its face usurious, unlawful intent is presumed."

To the same effect: Houghteling et al. v. Gogebic Lumber Company, 165 Mich. 498, 131 N. W. 109, 35 L. R. A. (N. S.) 1106; 139 Cyc. pp. 920 and 923; Washington Fire Ins. Co. v. Maple Valley Trust Co., 77 Wash. 686, 138 Pac. 553; Miller v. Insurance Company, 118 N. C. 613, 24 S. E. 484, 54 Am. St. Rep. 741; Riley v. Sears, 154 N. C. 509, 70 S. E. 997.

We are therefore of the opinion that the evidence introduced was sufficient to support the finding and the judgment of the trial court.

The judgment is affirmed.

By the Court: It is so ordered.