Denver & R. G. R. Co. v. Ashton-Whyte-Skillcorn Co., 49 Utah 82.

STRAUP, C. J., and FRICK, J., concur.

DENVER & R. G. R. CO. v. ASHTON-WHYTE-SKILL-CORN CO.

No. 2845.    Decided Dec. 19, 1916 (162 Pac. 83).

NEGLIGENCE—CARS ON SIDING—ESCAPE—NEGLIGENCE OF SHIPPERS—RES IPSA LOQUITUR. Where plaintiff carrier placed, at the request and for the convenience of defendant shipper to be loaded by him, two cars on a siding owned and operated by it, and to which other shippers and the public generally had access, and they escaped and were injured, the doctrine of *res ipsa loquitur* does not apply, so as to raise a presumption of defendant's negligence, though the brakes were in condition and were properly set when the cars were placed, and though defendant had loaded one car, and when one car was loaded it had to be moved forward before the other car could be loaded; the mere placing of the cars on the siding not being sufficient to bring them under the exclusive control and management of defendant for all purposes and at all times.[1]

Appeal from District Court, Third District; *Hon. F. C. Loofbourow*, Judge.

Action by the Denver & Rio Grande Railroad Company against the Ashton-Whyte-Skillicorn Company.

From an adverse judgment plaintiff appeals.

AFFIRMED.

[1]*Dearden* v. *Railroad Co.*, 33 Utah 147, 93 Pac. 271; *Paul* v. *Salt Lake City Ry. Co.*, 34 Utah 1, 95 Pac. 363; *Christensen* v. *Railroad*, 35 Utah 137, 99 Pac. 676, 20 L. R. A. (N. S.) 255, 18 Ann. Cas. 1159.

*Van Cott, Allison & Riter* for appellant.

*Bagley & Ashton* for respondent.

FRICK, J.

The plaintiff, in substance, alleges that it is the owner of and operates a certain line of railroad in Utah, and that in 1912 it also owned and operated a certain branch line known as the Sandy Branch, which extended about three miles easterly from its main line at Midvale, Salt Lake County; that on November 8, 1912, at defendant's request, the plaintiff delivered to the defendant for its use at a point on said Sandy Branch about three miles distant from said Midvale two empty cars; that the defendants after it had loaded one of said cars, carelessly and negligently permitted said two cars to escape and run down plaintiff's track, which is on a declining grade from the point where said cars were placed to be loaded, to Midvale; that said cars ran into and damaged other cars, to the plaintiff's damage, etc.

The defendant answered the complaint, admitting the placing of the cars, that they escaped, and that plaintiff was thereby damaged to a certain amount, and denied all other allegations of the complaint. The defendant also pleaded some affirmative defenses, which, in view of the ruling of the district court, are not material now.

Upon the foregoing issues the parties entered upon a trial of the case.

In support of its allegations the plaintiff, in substance, proved that a "day or two before November 9, 1912," one of plaintiff's trainmen placed two empty cars on a siding or spur track on the Sandy Branch aforesaid which was used by the defendant to load the rock or stone taken from its quarry which was some miles distant from the siding; that the siding was used by the defendant in common with other patrons of the plaintiff for loading and unloading freight; that the siding or spur track aforesaid was laid on an incline of between four and six per cent.; that the defendant had erected a derrick at the siding or spur track which it used in loading the rock produced in its quarry onto the cars,

84          SUPREME COURT OF UTAH.          [Dec.

Denver & R. G. R. Co. v. Ashton-Whyte-Skillcorn Co., 49 Utah 82.

usually flat cars, furnished by the plaintiff, which rock, it seems, were hauled from defendant's quarry to the siding aforesaid; that on the 9th day of November, 1912, the time of day does not appear, the two cars that were placed on the siding a day or two before escaped and ran down the incline to Midvale station where they collided with another car which was thereby greatly damaged; that one of the cars which ran away was loaded with rock, and the other was empty; that the brakes on the two cars in question had been inspected and were in good condition, and would operate both on the day the cars were placed on the siding and immediately after the collision had occurred; that a trainman who placed the cars on the siding had set the hand brakes on them when he placed them there, and he then had satisfied himself that the brakes had been properly set and that they held the cars in place on the siding; that only one car could be loaded at the derrick at the same time, and when that was done the loaded car had to be moved forward so as to make room for another. The injury and damage to the car and the amount thereof were admitted.

After producing the foregoing evidence, the plaintiff rested, and the defendant interposed a motion for a nonsuit upon various grounds, among others, that the plaintiff had failed to establish any negligence on the part of the defendant, and, further, that it had failed to prove what or who had caused the cars to escape. The district court sustained the motion, entered judgment dismissing the action, and the plaintiff appeals. The only error assigned is the granting of the motion for a nonsuit.

It seems quite clear that, if the proof of negligence in this case is to be governed by the ordinary rules of evidence which generally control in negligence cases, the evidence is insufficient to establish either the defendant's negligence or what or who caused the two cars to escape. Counsel for plaintiff, however, contend that under the undisputed facts of this case the maxim *res ipsa loquitur* applies in their client's favor, and hence the evidence was sufficient to establish at least a *prima facie* case of negligence on the part of the defendant,

and hence the court erred in sustaining the motion for a non-suit. Is that contention sound?

As we have seen, the transaction in this case is not essentially different from what it must necessarily be between a common carrier of freight and the shippers of articles that are produced or shipped in large quantities over the line of railroad owned and operated by the carrier. Here the defendant had a stone or rock quarry which was a few miles off from the railroad. In order to get the rock to market the defendant was compelled to transport them on plaintiff's cars. To accomplish that purpose the defendant had erected a derrick at plaintiff's siding or spur track aforesaid by means of which the rock were loaded on the flat cars of the plaintiff. The derrick was so arranged that only one flat car could be loaded at the same time, and when one car was loaded it had to be moved forward so as to make room for another to be loaded at the derrick. As the rock were hauled from defendant's quarry they were thus, by means of the derrick, transferred or loaded upon the flat cars furnished by the plaintiff to the defendant at the siding or spur track aforesaid. Now, counsel contend that all that plaintiff was required to prove was that the two cars were placed at the siding at the request of the defendant for the purpose aforesaid; that the cars and brakes were in good condition when they were so placed there; that the brakes were properly set; and that they were sufficient to hold the cars at rest on the siding while being loaded in the ordinary and usual manner by means of the derrick. The cars, it is contended, were thus in defendant's possession and under its immediate management and control, and, in view of the fact that they escaped and ran down the track, the presumption arises that they did so by reason of something the defendant did which it should not have done or something it omitted to do which it should have done, and hence a *prime facie* case of negligence is made out. Counsel cite and rely upon the following cases in support of their contention: *Byrne* v. *Boable* (Eng.), 2 H. & C. 596; *Scott* v. *London, etc., Dock Co.* (Eng.), 3 H. & C. 596; *Kearney* v. *London, etc., Ry. Co.* (Eng.), L. R. 5 Q. B. Cas. 411; *Sweeney* v. *Erving,* 228 U. S. 238, 33 Sup. Ct. 416, 57 L. Ed. 815, Ann.

Cas. 1914D, 905; *Chenall* v. *Palmer B. Co.*, 117 Ga. 106, 43 S. E. 443; *Judson* v. *Giant Powder Co.*, 107 Cal. 549, 40 Pac. 1021, 29 L. R. A. 718, 48 Am. St. Rep. 146; *Newark, etc., Co.* v. *Ruddy*, 62 N. J. Law 505, 41 Atl. 712, 57 L. R. A. 624; *Patton* v. *Texas, etc., Ry. Co.*, 179 U. S. 659 21 Sup. Ct. 275 45 L. Ed. 361. They also cite. Wigmore on Evidence, Section 2509 where the maxim is discussed

It is not necessary for us to pause to review the foregoing cases. It is sufficient to say that all of them are correctly decided and that the maxim of *res ipsa loquitur* is there correctly stated and applied. Neither is it necessary for us to again discuss the conditions under which the maxim ordinarily applies. Those conditions are sufficiently illustrated in the cases of *Dearden* v. *Railroad Co.*, 33 Utah 147, 93 Pac. 271; *Paul* v. *Salt Lake City Ry. Co.*, 34 Utah 1, 95 Pac. 363; *Christensen* v. *Railroad*, 35 Utah 137, 99 Pac. 676, 20 L. R. A. (N. S.) 255, 18 Ann. Cas. 1159. Counsel, however, do not contend that in any of the cases referred to the facts were like those that control the case at bar, but what they do contend is that the undisputed facts bring this case within the maxim.

We cannot yield assent to that contention. In our judgment the contention is fallacious in that it assumes a very essential element, namely, that the two cars at the time they escaped, were under the immediate control and management of the defendant; and upon that assumption they base another, namely, that the defendant did or omitted something which caused the cars to escape. It is quite true that, if a passenger is injured while he is on the train of a common carrier which collides with another train, the maxim of *res ipsa loquitur* applies, because the train and the track on which it was operated and on which the passenger was injured were under the immediate control and management of the carrier, and hence the presumption may well be indulged that the collision was caused by something done or omitted by the carrier. Where, however, as here, the carrier merely places a car upon a siding owned and operated by him, and to which other shippers and the public generally have access, and which car is placed there for the convenience of a particular shipper to

be loaded by him, the car is not necessarily under the immediate and continuous control or management of the shipper during all of the time it may be on the siding. Under such conditions it may well be that a stranger to both the shipper and the carrier, or some other shipper or patron of the carrier, may in some way have come in contact with the car or so interfered with it as to cause it to start to run down the incline of between 4 and 6 per cent. True, the shipper for whose convenience the car is placed on the siding while loading it would have control and management of the car. In loading it he may thus do something to cause the car to escape. Will it be presumed, however, that it is improbable that a car, under the conditions disclosed by this record, was not caused to be moved by any other agency than that of the shipper? Had the plaintiff shown that the defendant was engaged in loading the cars in question at the time they escaped, the presumption might rationally be indulged that it either did some act it should not have done or omitted something it should have done which caused the cars to move and escape. It was essential, however, for the plaintiff to prove that the defendant had actual control and management of the cars at the time they escaped. Had that been done, the plaintiff would be in a better position to invoke the presumption that it was the defendant's negligence that caused the cars to escape. As the record now stands, however, the presumption of defendant's negligence must be based upon another presumption, namely, that the cars were in the actual control and management of the defendant when they escaped. This would result in basing one presumption upon another which would be in violation of an elementary rule of evidence.

That the defendant was not necessarily in the actual control or management of the cars at the time they escaped, and that for that reason the maxim of *res ipsa loquitur* does not apply, is illustrated in the case of *Christensen* v. *Railroad, supra.* While in that case the train was clearly under the immediate control and management of the railroad company, yet the car door, the instrumentality which there caused the injury, was not necessarily under the company's immediate control and management at the time the door was closed, the closing of

which caused the injury complained of. Persons other than the carrier and its servants had access to the door and had both the right and the power to open and close it at will, and, the evidence failing to show that the door at the time it was closed was under the control and management of the carrier rather than it was caused to be closed by any one of the many others who had access thereto, it was held that the maxim did not apply, and that the evidence failed to establish an essential element. So here. When the plaintiff rested it had failed to prove that the cars were under the immediate control and management of the defendant when they escaped, and hence it had failed to establish one of the material elements without which it had failed to prove a case. Any other conclusion would make every shipper for whose convenience cars are placed on a siding or spur track, which is owned and operated by the carrier and to which other shippers and the public generally have access, presumptively liable for every injury that was caused by any escaping car from such a siding, regardless of the fact that it was just as probable that some agency other than that of the shipper caused the car to escape. If appellant's contention is to prevail in this case, then, if the cars had escaped within an hour after they had been placed on the siding, the presumption would prevail that the defendant caused them to do so, although the fact might well be that it had not yet learned that the cars were actually placed on the siding.

It is suggested, however, that one of the cars was in fact loaded, and that it was thus shown that the defendant had used it for the purpose for which it was placed on the siding. As we have seen, however, counsel insist that the mere fact that the cars were placed on the siding at the request of the defendant and for its use was sufficient to place them entirely within its control and management, and that in view of that fact the presumption arises that they were caused to move by reason of defendant's fault. In view of that contention, the fact that one of the cars was loaded is only of secondary importance, since that fact would only strengthen the presumption contended for by counsel, but would not give rise to it. We have pointed out, however, that merely to place the cars

upon the siding for the purpose stated was not sufficient to bring them under the exclusive control and management of the defendant for all purposes and at all times under the evidence in this case. Nor was the fact that one of the cars was loaded, when considered in connection with the other fact that they were placed on the siding, sufficient to give rise to the presumption contended for by counsel. In view that others had access to the cars, and in the absence of any evidence that the defendant was in the act of loading or handling them in any way at the time they escaped, the probability is just as strong that the cars were caused to escape by some other agency as it is that they were caused to escape by reason of any act or omission of the defendant. There being no evidence, therefore, either direct or inferential, respecting the agency that caused the cars to escape leaves the whole matter to mere conjecture, and that does not constitute proof.

The judgment is affirmed, with costs to respondent.

STRAUP, C. J., and McCARTY, J., concur.