**SHEEHAN PIPE LINE CONST. CO. et al. v. STATE IND. COM. et al.**

No. 21596. Opinion Filed June 23, 1931.

Rehearing Denied Sept. 29, 1931.

Allen, Underwood & Canterbury, R. O. Stuart, and O. L. Lupardus, for petitioners in error.

J. Berry King, Atty. Gen., and Robert D. Crowe, Asst. Atty. Gen., for respondents in error.

Burns McCain, for J. J. Choate.

HEFNER, J. This is an original proceeding in this court brought by the Sheehan Pipe Line Construction Company and the Southern Surety Company, petitioners herein, to review an award of the Industrial Commission made in favor of J. J. Choate, the claimant herein.

The claimant is, and was at the time of his injury, a resident and citizen of the state of Oklahoma. The employer is and was an Oklahoma corporation with its principal place of business at Shawnee, Okla. The claimant had been in the employ of the petitioners on a job at Shawnee. After the completion of that work, he entered into a contract in this state to perform work for the employer in the state of Kansas. While working in Kansas, he received the injury complained of, which arose out of and in the course of his employment. The only question presented by petitioners' brief is whether the claimant, under the foregoing state of facts, may recover compensation in this state for an injury received in a foreign state.

Some of the states have an elective or optional Industrial Act, and in such states it has generally been held that the Industrial Act has an extraterritorial effect, and a claimant has been permitted to recover for injuries received in a foreign state. In some of the states the legislative act itself specifically provides for an extraterritorial effect. Was it the intention of our Legislature in adopting the Industrial Act to give it an extraterritorial effect? Our act (Comp. Stat. 1921, secs. 7282-7340, as amended) is compulsory, and is not optional as it is in some of the states. In the case of Warren City Tank & Boiler Co. v. Millham, 132 Okla. 244, 270 Pac. 85, this court, in speaking through Mr. Justice Clark, said:

"This hearing was had, and the evidence taken before the referee of the Industrial Commission of Colorado, and said evidence is in the record and was considered by the Industrial Commission of Oklahoma.

"Section 7316, C. O. S. 1921, provides: 'Any investigation, inquiry or hearing with (which) the Commission is authorized to hold or undertake, may be held or taken at any place in the state by or before any Commissioner. * * *'

"This gives the Industrial Commission authority to conduct hearings at any place within the borders of this state. but does not give the Industrial Commission authority to conduct a hearing without the state."

There is no provision in any of the statutes that provides that the Industrial Act shall have an extraterritorial effect, and the Warren City Case, supra, clearly indicates that it does not have such an effect.

The evidence discloses that this accident happened in Kansas. Before the claimant can recover, it is incumbent upon him to bring his claim within the provisions of the act. In the absence of an express provision in the act, making the same extraterritorial in its effect, he must show a positive legislative intent that the act should operate in cases where the injury arose outside of the territorial limits of the state of Oklahoma. Since our act is mandatory and not elective, jurisdiction is based upon the provisions of the act itself and not upon contract. It is generally held that where a contract is made in one state and is to be performed in another state, the law of the place of performance governs the contract. In other words, the laws of the foreign jurisdiction become a part of the contract. Nothing in our statutes suggests that the state of Oklahoma has attempted to draw within the scope of its own regulations the relation of employer and employee in work conducted in a sister state. Where an accident occurs in a foreign jurisdiction, perhaps the relation of employer and employee and the rights of each may better be determined by the law in the jurisdiction where the accident occurred.

A well-reasoned opinion is found in the case of North Alaska Salmon Co. v. Pillsbury (Cal.) 162 Pac. 93. In that case the claimant was employed under a contract made in the state of California to be performed in Alaska, and the claimant was injured while working in Alaska. The California Commission awarded the claimant compensation, and, upon review of the award, the Supreme Court of that state said:

"The case is before us on rehearing. Our former decision, upholding the jurisdiction of the Commission, was based on the theory that the Workmen's Compensation Law entered into and became a part of the contract of employment, and that, where such contract was made in this state, the statute fixed the rights of the parties with respect to any injury arising out of the employment, wherever such injury might occur.

"Upon further study, we are satisfied that this view is not tenable. The liability of the employer to pay compensation arises from the law itself, rather than from any agreement of the parties. The law operates upon a status, i. e., that of employer and employee, and affixes certain rights and obligations to that status. True, the relation of employer and employee has its inception in a contract, but, once the relation is cre-

ated, its incidents depend, not upon the agreement of the parties, but upon the provisions of the law. * * * There is a manifest difference between a compulsory act, like ours, and elective acts, like the Roseberry Act of 1911, and various statutes in other states, under which the compensation provisions are dependent upon the election or consent of the employer and employee. It may well be said that the rights declared by an elective statute have their origin and sanction in the agreement of the parties to be bound by the statute. Under a compulsory statute, however, the correlative rights and obligations are not founded upon contract. Nor do they correspond with the legal conception of a tort, since a liability is imposed without regard to the element of wrongdoing on the part of the person charged. The obligation is to be defined as a statutory one, attached by law to a given status."

In the case at bar, the office of the contract was to establish the relation of employer and employee. When this relation had been once established by the contract, our statute imposed certain duties and liability on the parties without reference to the stipulation of the contract with regard to the rights of the parties under it. Considering our Industrial Act as a whole, we do not think it was the intention of the Legislature to give it an extraterritorial effect. Since this is true, the claimant cannot recover herein. The petition to vacate the award is granted, and the case is remanded, with directions to dismiss it.

CLARK, V. C. J., and RILEY, CULLISON, SWINDALL, and ANDREWS, JJ., concur. LESTER, C. J., and McNEILL and KORNEGAY, JJ., dissent.

---

KORNEGAY, J. (dissenting). This is an original proceeding, the purpose of which is to review an award of the Industrial Commission giving to the plaintiff, J. J. Choate, compensation based on the wages drawn and for a number of weeks. It is conceded by all parties that the respondent Choate was employed by the petitioners, Sheehan Pipe Line Construction Company, in the performance of manual labor, and that he was receiving pay by the day for his work. It is further conceded by all parties that the Sheehan Pipe Line Construction Company is an Oklahoma entity, and residing in Oklahoma, its main quarters being at Shawnee, Okla.

The respondent, Choate, the injured workman, is a resident of Oklahoma, and was such when the contract of employment was made, and it is practically conceded that the contract of employment was made in Oklahoma, and contemplated work in the laying of a pipe line, part of which was in Oklahoma and part of which was in the state of Kansas.

The claimant had been working for sometime for the pipe line construction company, and a few days before the accident, the plaintiff was working at Shawnee, Okla., and when the work near Shawnee was finished, the work crew were scheduled to go to Tulsa and to Bartlesville, and the order was changed to go to Humbolt, Kan., to which place they went in the employer's truck. Being at Humbolt a few days, they moved to Chanute, and finished the work in the neighborhood of Chanute on April 20th, and returned to Tulsa, Okla., and went on to Davenport, Okla., where claimant worked for five days and finished up the work there, and came back to go to work at Sand Springs, but there was a change in orders sending them to Shawnee The claimant could not go to Shawnee, on account of his physical condition, arising out of an injury that he sustained without fault of the construction company, or any of its agents, but while in its employ, and while at work near Chanute, Kan., in endeavoring to pry up a rock that was in the way of laying the pipe line.

The company had pay day twice a month, and wherever the work crew was when pay day came, they got their pay, and off and on, for years, the claimant had worked for the pipe line construction company, and had received pay after the completion of any particular job done.

In this particular case, the claimant suffered a strain to either the muscles or ligaments of the left leg in the neighborhood of the knee. The claimant did not think of it as being serious at first. He undertook to treat it with some liniment, but it got worse, and by the time they got ready to go back to Shawnee, he was not able to go. He communicated to the office of the company with reference to his condition as claimed by him, but was not able to get any help, as the head men were generally gone from the office at Tulsa. He was taken to the Veterans' Bureau Hospital at Muskogee for attention, as he had served in the World War. He remained there for seveal months, from sometime in the spring until the fall. His leg was swollen and inflamed, and a large accumulation of pus formed in it, and he found himself practically bedfast for four months, and was still walking on crutches when the award was made to him by the Industrial Commission, which the insurance company and the employer seek to vacate.

There was testimony of doctors who examined him, and while there was some var-

iance in their views as to the lasting quality of his hurt, by far the expert testimony disclosed an injury that was attributable to the accident that happened to him while he was prying up the rock. His own testimony and the testimony of his coworker clearly establish the injury. When he was able, he presented a claim to the Industrial Commission of the state of Oklahoma against the Oklahoma employer, both having been at all times residents of Oklahoma, for compensation provided by the Workmen's Compensation Act.

It appears that neither the Sheehan Pipe Line Construction Company, nor the insurance carrier, the Southern Surety Company, have ever contributed anything whatever to his medical necessity or to maintaining him while he was disabled. It appears that the construction company, and also the carrier, very promptly met him with a plea of "extraterritoriality" in the shape, first, of a special appearance and a motion to quash the claim, which appears to have been filed with the Industrial Commission on October 22, 1929. That claim showed that he had been disabled since May 5, 1929, as a result of the accident which occurred on April 10, 1929, and it gave the names of the attending physicians as A. L. Malby, S. C. Mitchell, F. H. Fannin, Shade Nuly, Dr. Fite, with their addresses as the Veterans' Hospital, Muskogee, Okla.

The Industrial Commission sent to the carrier a request on November 9th to send in No. 6 or denial, and again on the 3rd of December the same request was made, followed on the 4th of December by motion to quash the claim, because the accident occurred near Chanute, Kan., and the Industrial Commission had no jurisdiction of the claim. Both the construction company and the Southern Surety Company filed a motion to quash. However, the Commission set the case for hearing for the purpose of determining liability, and the extent of disability.

The claimant, by his attorney, filed a response to the motion to quash the claim in which he set up the fact that the claimant was a resident of Oklahoma, was employed in Oklahoma, worked in Oklahoma, and under the same contract of employment was sent to Kansas, and worked near Humbolt, and was sent to Chanute and worked from the 21st of March to the 27th of April, was then sent to Davenport, Okla., and worked till the 5th of May, 1929, and that the contract of employment was an Oklahoma contract, partly performed in Oklahoma, and partly performed in Kansas, and that the injury occurred in Kansas.

Attorneys went further and said that they were not able to find an Oklahoma case, deciding the jurisdiction of the Commission under those conditions, but that the great weight of authority in other jurisdictions was to the effect that the Commission had jurisdiction of the claim, and they cited Corpus Juris, and the New York case of Host v. Hurger, holding that the man employed in New York and sent to New Jersey, and injured there in the course of his employment, could recover compensation in New York under its compensation law.

The employer and the insurance carrier filed an answer making a general denial of everything contained in the claim, and a denial of disability, a denial of notice, and a denial of jurisdiction. The Commission proceeded with the hearing and the taking of testimony. The testimony developed a case that was clearly within the objects to be obtained by the Workmen's Compensation Law of Oklahoma. The employment was established, and it was further established that during the course of the employment and arising out of it, the claimant had sustained an accidental personal injury that had resulted in a very grave disability. While the strain was not thought much of by the claimant at the time he received it, and he resorted to simple remedies such as liniment, he reported the matter to those above him, and his injury was known by his fellow workmen. It developed that after finishing the piece of work they were then on at Chanute, Kan., they moved back to Oklahoma for the purpose of finishing the same kind of work in Oklahoma, and having gotten worse, he was compelled to go to bed. Suppuration of the injured leg necessitated his going to the Veterans' Hospital at Muskogee, Okla. He remained there something like four months, and finally was enabled to walk on crutches, and was still walking on them when the hearing was had, with no prospects of ultimate recovery. This was testified to by doctors, and the claimant, having suffered the injury and physical pain and disability, testified to it, and also one of the fellow workmen gave his version of the facts.

The insurance company and the employer apparently, when the evidence was over, were convinced that the injury had been traced to the accident, but they strongly insisted that because the injury had taken place in Kansas, the Commission was without jurisdiction to award compensation to the claimant.

The Commission, presided over by Judge Doyle, at the conclusion of the evidence, overruled the objections on account of the

locality of the injury, and in very apt words expressed the view of the Commission, as follows:

"By Judge Doyle: Now, gentlemen, in this case, I find, from the examination of the briefs, elaborate and excessive in every respect, showing a patient effort on the part of the counsel of both sides, that in the respective jurisdictions throughout the United States, where the Workmen's Compensation Law is in force, where this question has been determined—but it is a matter that is conceded as open and undetermined by the Supreme Court of the state of Oklahoma, and therefore an open question in this jurisdiction, whether there is any extraterritorial jurisdiction, with this Commission on contracts made in the state. One line of authorities shown by the brief of the claimant and answered by the respondent's brief wholly ignores the place of contract—the place of contract governs, and only casual employment outside of the state—the lex loci contractus or whether the Compensation Law has an extraterritorial effect, the contract controls, the leading case as to the jurisdiction is that of the court of appeals relied upon by the respondent in this case, from New York. It is very elaborate—the true test only supports the employee, they contain the authority you relied on—they reversed the Commission and laid down the line of authorities which in a large measure has no application to the law of this state—they have no application, with express contract made outside of the state wherein the employee had entered another state.

"You cite authorities—there is no way for any lawyer on earth to reconcile these authorities, though elaborate. This board is only an administrative board. It is settled law in this jurisdiction that the Workmen's Compensation Law must be liberally construed, this is binding also on the Supreme Court, on this law question; here is a man who is a resident of our state, and domiciled here, and by reason of the extensive extent of the pipe line, was sent out of the state; while in the employment of the company receives this injury—this is his home, the question is whether or not the Workmen's Compensation Law applies during that absence from the jurisdiction—I am inclined to think it does—that is proper view, as far as at least the Commission is concerned."

"By Judge Doyle: The order of the Commission in this case that he should be paid the maximum compensation at the rate of $18 per week from the 15th of May, approximately 52 weeks, with a continuing order. continue to pay the same until the further order of the Commission. It is not the proper time to determine the extent of disability. Fifty-two weeks from May 15, 1929."

The result was that the award was made giving compensation, and the court now reverses it, upon the proposition that the injury happened in Kansas, notwithstanding the contract of employment was made here between local citizens, one a corporation and the other an individual, and this being the place where the claimant could get jurisdiction of the employer, and being where the consequences occurred, so that the claimant must lose the benefit of the award.

There was no proof offered on the hearing as to what the Kansas law was. If we indulge the presumption that the common law prevails there, governing the injury that occurred in this particular case, there would be no redress of any kind, the master would not be liable.

The accident that resulted in the disability no doubt occurred while the claimant was carrying on his employment, and arose out of the employment. There was not the lack of due care that was requisite under the common law for a recovery in a case of this sort. To remedy that situation, the Legislature of this state provided that every employer should provide compensation for the employee in the case he was hurt while engaged in the matter about which he was employed. It did not make any limitation as to where the work was to be performed. It was compensation. The compensation under our law is based upon the wages that were being paid to the employee at the time of the accident. Our law is further based upon the proposition that the person that is hurt in industry should be repaid in some small degree for the surrender of the right to sue the captains of industry for personal injury. In exchange for that exemption, there are times when industry must bear that which is purely accidental, instead of leaving the injured workman a broken wreck, cast aside, with no help, no prospect, no hope, to be taken care of by the community in which he lives, after its usual manner of caring.

This compensation law was based upon a speedy and a safe and a sure method of getting something in the hour of misfortune to obviate these difficulties. It affects all contracts of employment entered into in Oklahoma, and makes no limitations as to the place of performance. Under the old order, when the laborer was hurt, there was difficulty in getting service upon the employer, and there was difficulty in getting court machinery to function, and so out of a humanitarian view, and in the exercise of plenary police power, the Legislatures in the different states have provided a way of handling the question of recovering compensation for the incapacitated laborer. The state has provided an inexpensive method of doing this, obviating the selection of juries and consuming the time of the courts, in

fact, has gotten rid, as far as possible, of the old hindrances which were continually thrown in the way of the injured workman, and has endeavored to throw upon industry the cost of industry, rather than on the public.

The courts have taken various views about the meaning of compensation laws, and if one should undertake to go through the various arguments, and statements, and counter-statements, of the decisions on these matters, he would find himself somewhere about the 11th Chapter of Genesis, where the denizens of the earth resolved to build a tower, "whose top may reach unto Heaven," and a little further along in this chapter, we find where the Creator appears on the scene and spoke of the people at one time having one language so that they understood each other, but, as a result of their machinations, they finally got so they could not understand one another, and the decisions of some courts upon industrial acts are about in that shape. The best way, therefore, would be to get the particular act and see what the Legislature said about it, in the light of ordinary rules of construction. The acts of the various commonwealths vary greatly in their provisions, and the great danger of citing Corpus Juris and Cyc. becomes apparent the minute one undertakes to compare.

Referring to our own law, there is nothing in it that would indicate that the state, having in its borders the employer, a creature of the state, or licensed to do business, and the employee, a citizen and resident of the state, intend to exempt such an employee from the benefits of the compensation law, if the injury occurred in an adjoining state. By the terms of the statute, in the absence of substantial evidence to the contrary, the claim comes within the provisions of the act. It might be said that the provision providing for the compensation, as contained in section 7285, C. O. S. 1921, with reference to a guard or protection furnished for use pursuant to any statute or order of the State Labor Commissioner, is indicative of legislative intent that no labor performed outside of the state should come within the provision of the act. But there is a later provision in the act, a good deal broader in its scope so far as territory is concerned, than the confines of the state. The provision with reference to insurance makes every employer contracting in the state secure compensation to the employee by insuring and keeping insured the payment of such compensation, carrying it down through subcontractors.

The employer was a citizen of and acting in the state of Oklahoma. The employee was in the same condition. The work to be performed was partly in the state and partly out. In the event this insurance was not gotten by the employer, a court action was permitted, in the event the employee should become injured, for damages for such injury, and in such action the defendant would not be allowed to prove negligence of a fellow servant, or that the employee assumed the risk of the employment, or that the injury was due to contributory negligence of the employee, with a further proviso that any other penalty provided for in the act for failure to secure the payment of compensation should be recoverable.

The Commission was created with full power to provide reasonable rules with reference to notice, the nature and extent of proof, and evidence, and the method of taking and furnishing the same in order to establish the right of compensation. One of the last provisions of the statute was that of causing depositions of witnesses, residing within or outside of the state, to be taken in the manner prescribed by law for taking depositions in any civil action in courts of record. The actual hearings and sittings of the Commission, however, were confined to the state.

Directly there is nothing said as to whether or not the act was by the Legislature intended to apply to accidents happening outside of this state under the employment provided for and covered by the act. Some of the courts from other states appear inclined to hold that, because the statute is silent on the subject, therefore it does not cover that kind of a case. Some seem to think that because the statute was silent on the subject, but dealt with the making of the contract and the compulsory requirement of insurance before the laborer went to work, that the statute governs where the employment led the laborer outside of the state in which the contract was made.

Some courts have satisfied themselves with the doctrine that because the liability flowed from a contract, it was not a tort, and that a contract was transitory in character, and therefore the right would exist in the laborer to have his compensation when injured outside of the state. Others seem to have thought that, as the provisions of the statute were compulsory, it could not be applied outside of the state where the contract was made. There are other and divers views so that the one language that we started out with, to wit, the language of the acts themselves, has been so confused that it is impossible to get much enlightenment on it by perusing court decisions.

Our own court seems not to have mixed in this confusion until now. It had a case

once, where the Commission had made an award arising out of an injury that happened in the state and some witnesses were examined before a referee of the Industrial Commission of Colorado. These depositions were used by the Commission in finding what the facts were. The case referred to is Warren City Tank & Boiler Co. v. Millham, 132 Okla. 244, 270 Pac. 85. It developed from the statement in the opinion that no testimony was taken before the Industrial Commission of Oklahoma, but was taken before the referee of the Industrial Commission of Colorado at Delta, and that an initial payment of compensation had been made by the Aetna Life Insurance Company, the carrier, and a report of the injury had been made by the claimant, and a report of the attending physician had been made, and a final receipt filed by the claimant. The court held that as the hearing was to determine the permanent loss of the fingers, the report of the physician was not competent to determine the matter, because at the time of his report the permanent condition of the hand could not be determined.

The record appears to be silent as to what steps were taken by the parties in interest to prevent this testimony, taken before this referee, from being considered by the Industrial Commission. But there is nothing whatever in that opinion that would indicate that the Laborer's Compensation Law of the state of Oklahoma, when it was called into operation by virtue of a contract between the employer and the employee, made in the state of Oklahoma, while both parties were citizens of the state and subject to its laws, would not require the employer, in case of injury, to provide for insurance to meet it. Neither is it perceived why the state of Oklahoma should not prescribe that if the employer desired to secure service by a binding obligation, made in the state of Oklahoma, to go abroad and do work for the employer, the employer should assume the risk of those things that were incidental to the industry, no matter where they were to be carried on.

In some of the briefs, the case of North Alaska Salmon Co. v. Pillsbury (Cal.) 162 Pac. 93, is referred to. The first impression of that court, as an inspection will show, was that, under the wording of the California act, the employer was made to assume the risk of the accidental injury of the laborer, called upon to go abroad and perform service for the employer. Upon rehearing the decision went the other way. It is a case of Phillip in one condition deciding the matter, and of Phillip in another condition deciding the matter, and the decision being crossways, or brought about by Phillip's condition. How-

ever, the Legislature of California seems to have changed the statute in the meantime. So, notwithstanding the decision in this case, the results in California were the other way. At page 93 (162 P.) of that decision the court says:

"The case is before us on rehearing. Our former decision, upholding the jurisdiction of the Commission, was based on the theory that the Workmen's Compensation Law entered into and became a part of the contract of employment, and that, where such contract was made in this state, the statute fixed the rights of the parties with respect to any injury arising out of the employment, wherever such injury might occur.

"Upon further study, we are satisfied that this view is not tenable. The liability of the employer to pay compensation arises from the law itself, rather than from any agreement of the parties. The law operates upon a status, i. e., that of employer and employee, and affixes certain rights and obligations to that status. True, the relation of employer and employee has its inception in a contract, but, once the relation is created, its incidents depend, not upon the agreement of the parties, but upon the provisions of the law. Our decisions upholding the validity of this legislation have emphasized, and found support in, the proposition that the statute is one regulating the rights and obligations attaching to the status of employer and employee. Western Idemnity Co. v. Pillsbury, 170 Cal. 686, 699, 151 Pac. 398; Western Metal Co. v. Pillsbury, 172 Cal. 407, 156 P. 491. If the right to compensation rested upon contract, it would seem to follow that such right would exist only in cases of employment under agreements made after the passage of the statute. But it has never been supposed that any such limitation could be upheld. There is a manifest difference between a compulsory act, like ours, and elective acts, like the Roseberry Act of 1911 (St. 1911, p. 796) and various statutes in other states, under which the compensation provisions are dependent upon the election or consent of the employer and employee. It may well be said that the rights declared by an elective statute have their origin and sanction in the agreement of the parties to be bound by the statute. Under a compulsory statute, however, the correlative rights and obligations are not founded upon contract. Nor do they correspond with the legal conception of a tort, since a liability is imposed without regard to the element of wrongdoing on the part of the person charged. The obligation is to be defined as a statutory one, attached by law to a given status."

The date of the decision was the 14th of December, 1916. Just when the former decision was before the court, we are advised, but the record shows that the claimant was hired at San Francisco for the season of

1914, to work in Alaska, and that the Commission awarded him compensation, and the court thought he was entitled to it at first, and then took it back, because it had misconstrued what the contract of employment was, and that the contract, somewhat on the order of the contract of marriage, created a status. Later along the court says:

"It may be noted, in this connection, that the Legislature of 1915 amended the act by adding to it a new section (75a) declaring that the Commission should have jurisdiction 'over all controversies arising out of injuries suffered without the territorial limits of this state in those cases where the injured employee is a resident of this state at the time of the injury and the contract of hire was made in this state.' Stats 1915, p. 1101. This section was obviously not designed as a limitation upon the jurisdiction theretofore vested in the Commission. It was intended, rather, as a grant of power. The fact that the Legislature deemed it necessary to declare specifically that the jurisdiction of the Commission should extend to a certain class of cases of injuries arising beyond the state is more or less significant as indicating that the lawmaking body itself did not consider the original statute as covering extraterritorial injuries."

The court ends the opinion by saying:

"For these reasons we conclude that, under the statute as it read at the time of Anderson's injury, the Commission had no jurisdiction to award compensation. The award is annulled."

An inspection of the 1917 Laws of California, extra session of 1916, shows about what the Legislature thought of the vacillations of that court. It passed an act that was approved May 23, 1917, evidently intended to cure the ills brought about by the change in judicial interpretation, as follows:

"The Commission shall have jurisdiction over all controversies arising out of injuries suffered without the territorial limits of this state in those cases where the injured employee is a resident of this state at the time of the injury, and the contract of hire was made in this state, and any such employee or his dependents shall be entitled to the compensation or death benefits provided by this act."

It will be well to get back to our act and examine it independently of bringing in statements of courts dealing entirely with other statutes. However, the Supreme Court of the United States, to which we refer as the highest authority, has had occasion in the midst of the turmoil that has been brought about by reason of conflict of laws, and the place of contract, and the adaptability of subject-matter, to speak in the case of the State Industrial Commission of New York, Petitioners, v. Nordenholt Corporation and the Traveler's Insurance Company, 259 U. S. 263, 66 L. Ed. 933.

The Supreme Court of New York had reversed its own Commission awarding compensation to a laborer and directing the insurance company to pay it. The Commission, however, notwithstanding the decision of the higher court, went to the Supreme Court of the Union. The Appellate Court in New York had reversed this Commission and the Court of Appeals had affirmed its action in reversing the Commission and nullifying the award, and the Supreme Court of the United States, in referring to the matter, says:

" 'Two questions are presented: (a) Was Doey, at the time of his death, engaged in the performance of a maritime contract? * * *

" 'If the first question be answered in the affirmative, then it necessarily follows from the decisions of the Supreme Court of the United States above referred to (Southern P. Co. v. Jensen, and Clyde S. S. Co. v. Walker), that the Commission had no authority to make the award in question. In determining whether a contract be of maritime nature, locality is not controlling, since the true test is the subject-matter of the contract,—the nature and character of the work to be done. Erie R. Co. v. Welsh, 242 U. S. 303, 61 L. Ed. 319, 37 Sup. Ct. Rep. 116. In torts, the rule is different. There, jurisdiction depends solely upon the place where the tort was committed, which must have been upon the high seas or other navigable waters. Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157, 34 Sup. Ct. Rep. 733. An award under the Workmen's Compensation Law is not made on the theory that a tort has been committed; on the contrary, it is upon the theory that the statute giving the Commission power to make an award is read into and becomes a part of the contract. Post v. Burger & Gohlke, 216 N. Y. 544, 111 N. E. 351, Ann. Cas. 1916B, 158, 10 N. C. C. A. 888. The contract of employment, by virtue of the statute, contains an implied provision that the employer, if the employee be injured, will pay to him a certain sum to compensate for the injuries sustained, or, if death results, a certain sum to dependents. These payments are made irrespective of whether or not the employer was guilty of wrongdoing. It is a part of the compensation agreed to be paid for services rendered in the course of the employment'."

The Supreme Court proceeded to brush aside the other technical defenses that had been raised by the insurance carrier and the employer. This language is applicable to this case. The main purpose of the Laborer's Compensation Law is to give the laborer protection. Where the laborer is a contract laborer, and he goes from one place to an-

other pursuant to contract of hire, he is among strangers, and unacquainted with the laws of the state, and to say that we will read into our statute a demand to overlook such a party, when his family is here, the contract of employment made here, and employer is a resident, and the labor to be performed here in part, and he can perhaps only get service upon his employer here, and the consequences develop here, would be to read into this statute a condition that is not in it, and to exclude from its help a man that is entitled to its benefits.

Under these conditions, the answer of the defendants, setting up "extraterritoriality," should be scrutinized very carefully. If they had pleaded that, under the law elsewhere, they had helped this party some by giving him compensation, the plea would look better. The presumption is, of course, that if there had been anything paid or provided, the employer and the insurance carrier would have said so. No proof was offered to this effect, neither was any proof offered as to the Kansas law. The presumption, of course, would be that the common law, as we have it, would be in Kansas, and that the law of the forum is the same in Kansas as it is here, if there is any special law regulating the matter, so that no rule of policy of a sister state would be violated in letting the laborer get the benefit of the contract made here, at a place where he can get service upon the employer and insurance carrier, by whose law the contract of employment must be interpreted. On the other hand, to turn the laborer out at this time, when we know that one year is the standard limit to prevent the claim, would be a deprivation under the guise of judicial opinion of the rights conferred by the Legislature.

The Oklahoma Compensation Law makes the employer pay, as part of the wages, the compensation, which is based on wages. Under the rule laid down by the United States Supreme Court, this compensation, in the case of injury, is a part of the contract of employment. It is as much a part of the contract of employment as the daily wages.

A rule of interpretation of the obligations of a contract is that they are determined by the words of the agreement and the law of the place of contract. See 5 R. C. L., page 931. See, also, the statement quoted therein from the United States Supreme Court (Scudder v. Union Nat. Bank, 91 U. S. 406, 23 L. Ed. 245) as follows:

"Matters bearing upon the execution, interpretation, and validity, are determined by the law of the place where the contract is made."

A leading note on the subject is found on page 1345 of the 28th A. L. R., discussing some phases of this case. This is supplemented by note to Smith v. Van Noy Interstate Co., 35 A. L. R. 1409. Our law is based on contract, and the funds for compensation are provided by the employer, and pursuant to his contract, and there is no state scheme of insurance provided, and no insurance fund made up of mutual contributions, as in some places, and, under the authorities, there is neither necessity nor reason for taking from the claimant in this case the benefits of the award made in his favor by the Industrial Commission.

In the citations above, the authorities are reviewed, and it appears that the views of Mr. Bradberry are very much on the side of "extraterritoriality." The cases are again collated in 59 A. L. R. 741. The Supreme Court of Connecticut goes so far as to hold that the compensation laws so far partake of contract, that it would be a violation of the Constitution to change after the accident. It says in Preveslin v. Derby & A. Developing Co. (Conn.) 70 A. L. R. 1435:

"The Compensation Act of this state is contractual. General Statutes, p. 5342; Powers v. Hotel Bond Co., 89 Conn. 143, 145, 93 A. 245. The contract between plaintiff and defendant began with plaintiff's employment. The contract is to pay and accept such compensation as is prescribed by statute in effect at the date of the injury. Any legislation which purported to change a substantial term of this contract operative at the time of plaintiff's injury, passed subsequent to its making, would impair its obligation and fall within the ban of article 1 of the Constitution of Connecticut and of article 1, sec. 10, and the Fourteenth Amendment of the federal Constitution."

Under these authorities, and the construction of the Oklahoma act, it seems to me that the laborer in this case is entitled to his compensation as awarded to him by the Commission, and that the laborers who enter into contracts of employment that are called upon to go across the state line, are still within the protecting influence of the contracts made in Oklahoma by citizens of Oklahoma, to do work of a hazardous kind in Oklahoma, and elsewhere, to the same extent as if the work were confined to Oklahoma, and that a plea of "extraterritoriality," not based on a settlement, should be held bad, and I therefore dissent.

Note.—See under (2) anno. 54 A. L. R. 515; 5 R. C. L. 931. (3) anno. 3 A. L. R. 1351; 18 A. L. R. 222-28 A. L. R. 1345; 35 A. L. R. 1415; 45 A. L. R. 1235; 59 A. L. R. 736; 28 R. C. L. p. 726; R. C. L. Perm. Supp. p. 6191. (4) anno. L. R. A. 1916A,

444; 3 A. L. R. 1351; 18 A. L. R. 294; 59 A. L. R. 719; 28 R. C. L. p. 724; R. C. L. Perm. Supp. p. 6191; R. C. L. Continuing Perm. Supp. p. 1139.