## COWLEY v. ANDERSON et al.

No. 3358.

Circuit Court of Appeals, Tenth Circuit.

Jan. 21, 1947.

Rehearing Denied Feb. 28, 1947.

A. W. Trice, of Ada, Okl. (Orel Busby and L. H. Harrell, both of Ada, Okl., and G. M. Barrett and Forrest M. Divine, both of Hugo, Okl., on the brief), for appellant.

Forrester Brewster and Julian B. Fite, both of Muskogee, Okl. (Jay W. Harlan, of Danville, Ky., on the brief), for appellees.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

William C. Anderson and John C. Nichols were engaged in the flour milling business at Danville, Kentucky, under the trade name of Anderson & Spilman. S. L. Cowley was engaged at Hugo, Oklahoma, in the manufacture, sale, and distribution of a poisonous preparation designed to exterminate rats and mice. The product was marketed under a duly registered trademark. In 1939, the parties entered into a written contract which provided among other things that Anderson & Spilman should have a certain territory for the sale of the product, including Kentucky and other states; that they should keep enough men properly to work the territory if it were possible to get them; that Cowley should deliver the product f.o.b. at Danville or other designated place; that the contract should cover the period of five years from its date; and that should Anderson & Spilman fail at any time to develop and work the territory, the contract should become null and void. The parties acted under the contract for approximately four years. At the end of that time it was terminated and Anderson and Nichols brought this action against Cowley, alleging wrongful breach of the contract and seeking the recovery of damages. By answer, Cowley denied the alleged breach; and by counterclaim, he sought to recover damages. The cause was tried to the court without a jury. Judgment was entered for plaintiffs on their cause of action, and defendant was denied recovery on the counterclaim.

The contract was executed in Oklahoma and was to be performed in Kentucky. The action was instituted in the United States Court for Oklahoma, jurisdiction rested on diversity of citizenship, and therefore the law of Oklahoma in respect of the rules of conflict of laws has application. Klaxon Co. v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Smyth Sales v. Petroleum Heat & Power Co., 3 Cir., 128 F.2d 697; A. M. Webb & Co. v. Robert P. Miller Co., 3 Cir., 157 F.2d 865. It is the law in Oklahoma that the construction and validity of a contract executed in one state and to be performed in another is governed by the laws of the state of performance. Security Trust & Savings Bank v. Gleichmann, 50 Okl. 441, 150 P. 908, L.R.A.1915F, 1203; Legg v. Midland Savings & Loan Co., 55 Okl. 137, 154 P. 682; Midland Savings & Loan Co. v. Kuntz, 58 Okl. 156, 158 P. 604; Sheehan Pipe Line Const. Co. v. State Industrial Commission, 151 Okl. 272, 3 P.2d 199; Collins v. Holland, 169 Okl. 10, 34 P.2d 587. Accordingly, the construction and validity of the agreement between these parties must be determined by the laws of Kentucky.

It is contended that the agreement into which the parties entered did not constitute a legal and binding contract for the reason that it was fatally vague in that the amount of the product which Anderson & Spilman might require for resale in the territory allocated to them was not fixed and

was not ascertainable, and that it lacked mutuality in that it purported to bind Cowley to furnish all of the product which Anderson & Spilman might order, without limitation, but did not obligate Anderson & Spilman to purchase any definite amount. It is clear from the contract considered in its entirety and from actions of the parties under it that it was intended to grant to Anderson & Spilman the exclusive right to sell the product in the designated territory. It was for a definite period of time. It obligated Anderson & Spilman to develop and work the territory. It obligated Cowley to furnish the product needed for that purpose. By accepting the exclusive agency for the sale and distribution of the product over a fixed period of time, Anderson & Spilman impliedly agreed to purchase from Cowley all of the product needed to fill the orders obtained. Mills-Morris Co. v. Champion Spark Plug Co., 6 Cir., 7 F.2d 38; Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 118 N.E. 214; Ehrenworth v. George F. Stuhmer & Co., 229 N.Y. 210, 128 N.E. 108. And under the law of Kentucky a contract of this nature embodying reciprocal obligations of this kind is not void for being vague or for want of mutuality. Peck-Williamson Heating & Ventilating Co. v. Miller & Harris, Ky., 118 S.W. 376; Elkhorn Consolidated Coal & Coke Co. v. Eaton, Rhodes & Co., 163 Ky. 306, 173 S.W. 798. See also, Marrinan Medical Supply, Inc., v. Ft. Dodge Serum Co., 8 Cir., 47 F.2d 458; Falstaff Brewing Corp. v. Iowa Fruit & Produce Co., 8 Cir., 112 F.2d 101; Bendix Home Appliances v. Radio Accessories Co., 8 Cir., 129 F.2d 177; Ehrenworth v. George F. Stuhmer & Co., supra; McMichael v. Price, 177 Okl. 186, 58 P.2d 549.

The further contention is that under the terms of the agreement it lay within the power of Anderson & Spilman to terminate the contract at any time; that where one party to a contract has the power to terminate at any time, a like right of termination must be implied in favor of the other party; and that therefore Cowley could exercise his right of termination at any time. The contract provided that Anderson & Spilman should develop and properly work the territory assigned to them, and that if they should fail to do so at any time the contract should become null and void. There is no complaint that Anderson & Spilman failed to develop and work the territory. On the contrary, it is fairly apparent from the record that they did develop and work it. The provision in the contract was not intended to authorize and empower Anderson & Spilman to terminate the contract during its fixed life of five years by willing failure to develop the business in the territory. It was a provision for the protection of Cowley in the event that there was a failure to develop and work the territory in an efficient manner, due regard being had for all the circumstances. Moore v. Rogers, 240 Ky. 743, 43 S.W.2d 31.

Though the contract was valid in its terms, an unsurmountable difficulty confronts Anderson & Spilman in their effort to recover damages from Cowley for alleged breach on his part. Contracts of this kind are quite common. Sometimes they have been referred to as creating the relation of principal and agent and sometimes that of seller and buyer. But it is now well settled that such contracts create a dual relationship between the parties. In some aspects it is that of principal and agent and in some that of vendor and vendee. It is not altogether one to the exclusion of the other. Whatever the nomenclature, the parties are not ordinary principal and agent. Neither are they ordinary vendor and vendee, dealing at arm's length. The relationship gives rise to a duty of mutual trust, confidence, and loyalty in their dealings with each other respecting the subject matter of the contract. Each owes the other a full measure of integrity and fidelity. Smyth Sales v. Petroleum Heat & Power Co., supra. The law guards a relation of that kind with a jealous care and is quick to disapprove a breach of the duty arising out of it. The exaction of good faith of parties occupying the relation is not a technical or arbitrary rule. It rests upon the broad principle of sagacious public policy. And that principle brings within its sweep good faith and fidelity in respect of trade secrets or other unique methods or matters relating exclusively or peculiarly to the business or

product of the employer, principal, or vendor in a case of this kind. American Law Institute Agency, § 395.

Here, the Cowley product was prepared according to a secret formula. Its constituent elements were a trade secret relating peculiarly and exclusively to the business of Cowley. And the product was the subject matter of the contract in suit. Shortly after the contract was entered into and while the parties were acting under its provisions, Anderson & Spilman caused the product to be subjected to separate chemical analyses and otherwise experimented with it, all without the knowledge of Cowley. Their purpose was to work out a formula of their own for the manufacture of an identical or like preparation for sale to the public. They were not successful in obtaining a complete analysis of the Cowley product. They ascertained that it contained arsenic and anise oil, and they further ascertained that it contained other elements or ingredients but they were unable to determine just what they were. The outcome of their efforts in composite was a formula for a preparation of their own called Zip. And while their contract with Cowley was still in effect, Anderson & Spilman manufactured and made sales of Zip to purchasers, some in the territory included in the contract. Some of the purchasers of Zip had previously purchased the Cowley product from Anderson & Spilman. Some of the sales were made in 1942, and some in 1943 after Cowley was unable on account of a shortage of bottles to furnish Anderson & Spilman with his product. After learning these facts, Cowley declined to furnish Anderson & Spilman further quantities of this product and that declination is relied upon as constituting a breach of the contract. But the action of Anderson & Spilman in subjecting the Cowley product to chemical analyses and otherwise experimenting with it in an effort to effectuate a formula of their own for an identical or like product to be sold to the public in competition at least to a limited extent with the Cowley product, the making of the formula for Zip using in part the information obtained through the analyses of the Cowley product, and the sale of Zip to purchasers within the area embraced within the contract, was a violation of a duty which they owed Cowley and constituted a breach of the contract on their part long before Cowley declined to furnish them with further quantities of his product.

In order to constitute a breach of the good faith and fair dealing which each party owes to the other in a case of this kind, the infidelity must have some reasonable relation to the subject matter of the agreement or contract. But the business of Cowley consisted of two elements which entered into the whole. One was the manufacture of the product, using the secret formula. The other was the sale and distribution of the product. The two elements combined made up the business as a single entity, and they were not distinct or unrelated each to the other. Manifestly the business could not survive long without both. Though the contract under consideration concerned itself only with the sale and distribution of the product, the action of Anderson & Spilman in subjecting the formula to chemical analyses, in otherwise experimenting with it, in using the information thus obtained in arriving at their own formula for Zip, in manufacturing and making limited sales of Zip in the territory embraced within the contract, all while the contract was in force and the parties were acting under it, constituted an adverse blow at the business of Cowley, a blow upon which the rule exacting integrity, good faith, and fair dealing cannot place its approval.

The trial court found that the limited number of sales of Zip made prior to the time that on account of the shortage of bottles Cowley found himself unable to supply Anderson & Spilman with the requested quantities of his product were not prejudicial to Cowley. But that is not the test. The effect of the action of Anderson & Spilman in undertaking to explore the secret formula of Cowley for the purpose of using the information to their own advantage is not to be measured by the extent of the financial loss which Cowley suffered. Randall v. Peerless Motor Car Co., 212 Mass. 352, 99 N.E. 221. The policy of the law was contravened by the wrongdoing of Anderson & Spilman in violation of their

duty toward Cowley, quite apart from the extent of financial injury which Cowley suffered. Randall v. Peerless Motor Car Co., supra.

Anderson & Spilman seek to justify their action in subjecting the Cowley product to chemical analyses, in otherwise experimenting with it, and in making limited sales of Zip while the contract was still in force and effect. They say that Cowley displayed some disposition to terminate the contract; that as a protective measure against the day when he might terminate it they undertook to prepare a formula for their own product; and that the chemical analyses were made and the experimenting had as a part of their effort in that behalf. The mere planning, without more, by a party to a contract of this kind to engage in a competitive business of his own after the expiration or termination of the contract is not a breach of the good faith due the other party. Keiser v. Walsh, 73 App.D.C. 167, 118 F.2d 13; Meyers v. Roger J. Sullivan Co., 166 Mich. 193, 131 N.W. 521, 34 L.R.A., N.S., 1217. But Anderson & Spilman did more than make plans to be placed in operation after the termination of the contract. While the contract was in effect, they explored the secret formula of the Cowley product, used the information thus obtained in preparing their own formula for Zip, and made some sales of Zip within the territory embraced in the contract. Those affirmative acts went far beyond the mere making of plans for use after the contract ended. They amounted to bad faith which constituted a breach of the contract. Keiser v. Walsh, supra; E. L. Husting Co. v. Coca Cola Co., 205 Wis. 356, 237 N.W. 85, 84 A.L.R. 22, certiorari denied 285 U.S. 538, 52 S.Ct. 311, 76 L.Ed. 931. And after such breach, Cowley was not obligated in law to continue to perform or further to abide the provisions of the contract. Economy Baler Co. v. Cohen, 2 Cir., 296 F. 904; Bilz v. Powell, 50 Colo. 482, 117 P. 344, 38 L.R.A., N.S., 847; Ewing's Appeal, Pa., 4 A. 832.

Error is assigned upon the action of the court in refusing to enter judgment for Cowley on his cross-complaint. We have examined the contention and fail to find merit in it.

The judgment insofar as it awards damages to Anderson & Spilman is reversed and the cause is remanded.